SOCRATES QUICKSILVER MINES v. CARR REALTY CO.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1904.)

No. 990.

1 EQUITY—RELIEF AGAINST FRAUD—LACHES.

A bill by one claiming under part of the locators of a mining claim, seeking relief against fraud by which the other locators obtained a patent to the entire claim, is demurrable on the ground of laches, having been filed 34 years after the beginning of the fraud, and 28 years after its consummation, where there was nothing to show that complainant's grantors had actual possession of the ground after the making of the application for the patent, and it affirmatively appeared that from a short time thereafter the whole of the property was held adversely to them by defendants and those under whom they claim; that immediately after issuance of the patent the patentees and their successors in interest expressly repudiated and ignored any interest of complainant's grantors, and claimed the whole property; that many of the parties whose acts are complained of have died; that for 30 years after application for the patent no work was done on the property, and that thereafter work was done for 3 years at a loss, but that at the commencement of the suit the property was worth $500,000.

Appeal from the Circuit Court of the United States for the Northern District of California.

A. H. Ricketts, for appellant.

William E. Colby, for appellee W. H. Jordan.

Robert B. Gaylord, for appellee Carr Realty Co.

Crittenden Thornton, J. F. Riley, and John H. Miller, of counsel for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The demurrers of the various defendants raise several objections to the bill, but one of which it is necessary to

consider. We are of the opinion that the bill shows on its face such laches that the court below rightly sustained the demurrers on that ground, and dismissed it. "A court of equity," said Lord Camden, "has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there has always been a limitation to suits in this court." Smith v. Clay, 3 Brown's Chy. 639, note. This doctrine has been repeatedly recognized and acted upon by the Supreme Court. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942, 34 L. Ed. 424, and cases there cited.

The doctrine that neither laches nor limitation runs against him who is in actual possession is wholly inapplicable to the facts alleged in the present bill, the substance of which is, so far as applicable to the ground upon which we rest our judgment, that on the 21st day of September, 1867, William S. Bell, Charles Bell, F. X. Banks, John W. Rock, John D. Elwanger, J. M. Epperson, Bedford Manning, W. W. Davis (sometimes called Henry H. Davis), P. K. Epperson, William T. Lane, James H. Lane, Katherine Lane, Alice Lane, and J. B. Epperson, each of whom was then a citizen of the United States, finding a certain portion of the public domain unoccupied and vacant, and not owned or held or claimed by any one, entered thereon, and discovered therein a lode or vein of mineral-bearing ore in place, carrying cinnabar, whereupon they located the same as the Socrates Quicksilver Mines, by the erection of monuments at each of the corners of the claim and at or near the center of each end line thereof, and by placing in one of the monuments a written notice of the location of the claim, designating the same as a location monument, all of which monuments were erected in conspicuous places, and were so placed as that the boundaries of the claim could be readily traced on the ground; that the ground so located was situated in Cinnabar mining district, Sonoma county, Cal., in which district the locators caused a record of the notice of their location to be made with the recorder of the mining district on the 13th day of October, 1867, and on the 24th day of the same month caused the same notice to be recorded in the office of the recorder of the county. It will be noticed that, according to the averments of the bill, there were but 14 of these locators; but it would seem from subsequent averments that there were really 15, and that one—George M. Parker—was inadvertently omitted from the list. We shall so treat the bill.

It is averred that at the time of making the location of September 21, 1867, the locators took possession of the claim, and continuously held, occupied, and improved the same, in accordance with the rules, regulations, and customs of the miners of the district in which it was situate, and with the laws of the United States and of the state of California, and expended in labor and improvements thereon more than $1,000, and held exclusive and unopposed possession of the whole thereof until February 2, 1869; J. M. Epperson, however, having in the meantime and on the 15th day of January, 1869, conveyed his interest in

the claim to one William Troop. Thus, according to the averments of the bill, the original locators (including, as the assignee of one of them, Troop) held the exclusive possession of the claim for a little over 16½ months, during which time they expended in labor and improvements thereon over $1,000, and at the expiration of which time it is averred they were entitled to apply to and receive from the government a patent for the mine. But what then happened, according to the bill? Instead of an application for such patent on the part of the assignors of the complainant *jointly with their co-locators or otherwise*, William S. Bell, Charles Bell, John W. Rock, John D. Elwanger, and James M. Epperson entered into a conspiracy with certain strangers to the claim, namely, R. M. Garratt, Joseph C. Coleman, J. N. Barney, Philip Douglass, William D. Grove, G. W. Greeley, Samuel S. Boone, B. W. Lyons, Charles Myrtetus, Christopher Myrtetus, Thomas H. Washington, Otto Walther, and John A. Robinson, for the purpose of procuring a patent from the United States to the mine in question, "Whereby said William S. Bell, Charles Bell, Charles Myrtetus, Thomas H. Washington, J. M. Epperson, John D. Rock, R. M. Garratt, Joseph C. Coleman, Philip Douglass, William D. Grove, G. W. Greeley, Samuel S. Boone, Christopher Myrtetus, and B. W. Lyons should be named and appear as the grantees in such patent, and therein and thereby appear to be the legal owners of said premises, and the whole thereof, notwithstanding the fact that said Charles Myrtetus, Thomas H. Washington, R. M. Garratt, Joseph C. Coleman, Philip Douglass, William D. Grove, G. W. Greeley, Samuel S. Boone, Christopher Myrtetus, B. W. Lyons, and J. M. Epperson had no valid right, title, claim, or interest in said premises, or any part thereof"; that in pursuance of the alleged fraudulent conspiracy the two Bells, J. M. Epperson, John W. Rock, John D. Elwanger, Otto Walther, and John A. Robinson, contriving and intending to cheat and defraud the original locators, Banks, Parker, Manning, Davis, P. K. Epperson, J. B. Epperson, and the Lanes, of their interest in the mine, and to prevent the issuance of a patent therefor to them, did, on the 8th day of February, 1879, apply to the proper officers of the United States Land Office for a patent to the mine, "then and there falsely and fraudulently claiming and pretending to said officers that said William S. Bell, Charles Bell, J. M. Epperson, John W. Rock, John D. Elwanger, Charles Myrtetus, Thomas H. Washington, R. M. Garratt, Joseph C. Coleman, Philip Douglass, William D. Crowe, G. W. Greeley, Samuel S. Boone, Christopher Myrtetus, and B. W. Lyons were then and there the owners of the possessory title to the said mine, and the whole thereof, and as such co-owners entitled to make application for and obtain a patent from the United States for said Socrates Quicksilver Mine, and the whole thereof; that said William S. Bell, Charles Bell, J. M. Epperson, John W. Rock, John D. Elwanger, Otto Walther, and John A. Robinson, did, in pursuance of their said wrongful and fraudulent purpose, file, in the said United States local land office at the said city and county of San Francisco, certain sham and pretended proofs in said application for patent, wherein and whereby they caused it to appear to the register and receiver of the said local land office, and the officers of the Land Department of the United States, that said William S. Bell, Charles Bell, J. M. Epperson, John D.

Elwanger, John W. Rock, Charles Myrtetus, Thomas H. Washington, R. M. Garratt, Joseph C. Coleman, Philip Douglass, William D. Crowe, G. W. Greeley, Samuel S. Boone, Christopher Myrtetus, and B. W. Lyons, were then and there the true and legal owners of the possessory title to said mining claim, and the whole thereof; that said proofs so filed were false and untrue, and concealed the true state of the title of said premises, and the true state of the title of said premises was not presented to the authorities in charge of the issuance of the said patent, and said pretended proofs were so made and filed for the purpose of imposing upon and deceiving the said register and receiver and the officers of the Land Department of the United States, and the said officers of the local land office at said city and county of San Francisco, and the officers of the United States Land Department were therefore and thereby imposed upon and deceived, and a fraud was thereby committed on the government of the United States, and upon said F. X. Banks, G. M. Parker, Bedford Manning, W. W. Davis, P. K. Epperson, William T. Lane, James H. Lane, Katherine Lane, Alice Lane, and J. B. Epperson, co-locators as aforesaid; for, if the true state of the title to said Socrates Quicksilver Mine had been shown in said patent proceedings, said ten persons lastly hereinbefore named would, with William S. Bell, Charles Bell, John W. Rock, John D. Elwanger, and William Troop, have been the grantees in and by the patent, instead and in the place of said Thomas H. Washington, Charles Myrtetus, R. M. Garratt, Joseph C. Coleman, Philip Douglass, William D. Crowe, G. W. Greeley, Samuel S. Boone, Christopher Myrtetus, and B. W. Lyons." It is alleged that thereafter, and because of the alleged wrongful and fraudulent acts of William S. Bell and his alleged confederates, a patent was issued by the government for the mine on the 13th day of August, 1874, to William S. Bell, Charles Myrtetus, Charles Bell, Thomas H. Washington, J. M. Epperson, John W. Rock, John D. Elwanger, R. M. Garratt, Joseph C. Coleman, Philip Douglass, William D. Crowe, G. W. Greeley, Samuel S. Boone, Christopher Myrtetus, and B. W. Lyons, which patent was, on the 14th day of October, 1874, recorded in the office of the recorder of Sonoma county. It is alleged that in pursuance of the alleged fraudulent scheme, and to secure to themselves the benefit of the alleged fraud and deceit, the two Bells, J. M. Epperson, Thomas H. Washington, and Charles Myrtetus procured Rock and Elwanger to join with Garratt, Coleman, Barney, Douglass, Crowe, Greeley, Boone, and Lyon to, in form, convey to them, the said William S. Bell, Charles Bell, J. M. Epperson, Thomas H. Washington, and Charles Myrtetus, an undivided 2,000 feet of the mine, although each of the parties to the pretended deed well knew that none of the pretended grantors therein except Rock and Elwanger had any right, title, or interest in or to the property; that the deed so made was recorded in the office of the recorder of the county on July 1, 1871. It is alleged that by reason of the said alleged fraudulent acts the two Bells, J. M. Epperson, Charles Myrtetus, Thomas H. Washington, and Christopher Myrtetus became the involuntary trustees of Banks, Parker, Manning, Davis, P. K. Epperson, J. B. Epperson, and the Lanes, and of their and each of their grantees and successors in interest, under whom the complainant

claims. It is alleged that, subsequent to the consummation of the alleged fraud, and after the issuance of the patent and the making of the aforesaid deed to William S. Bell and his alleged confederates therein named, the said William S. Bell, Charles Bell, James Epperson, Charles Myrtetus, Thomas H. Washington, and Christopher Myrtetus claimed and pretended to be the owners of said Socrates Quicksilver Mine, and the whole thereof, and they, and each of them, did thereafter barter, bargain, sell, and in form convey said property, or parts thereof, to sundry and divers persons.

Thus the alleged fraud complained of was initiated in February, 1869, by the application to the United States for its patent to the mine; was followed up by the alleged fraudulent deed of March 10, 1869, duly recorded July 1, 1871, and by the issuance and recordation of the patent in the year 1874, based upon the alleged false and fraudulent proofs and representations. The bill herein was filed February 7, 1903 —nearly 34 years after the beginning of the alleged frauds, and more than 28 years after their consummation. There is nothing in the bill to excuse the gross laches of those under whom the complainant corporation claims. It is not alleged when they first became aware of the alleged fraudulent scheme in pursuance of which the patent was applied for, or of the "sham and pretended proofs" (whatever that may mean) upon which the application was based. But they must be held to have had knowledge of all the proceedings for the patent, for they were matters of public record, of which it has been many times held the whole world must take notice. There is nothing in the bill tending to show that those under whom the complainant claims ever held actual possession of the ground in question after the making of the application for the patent, and it affirmatively appears from the bill that the whole of the property was held adversely to the complainant's grantors by the defendants, and those under whom they claim, from March 10, 1869. And again, it appears by express averment of the bill that as early as August 27, 1874, and within a few days after the issuance of the patent, the patentees and their successors in interest expressly repudiated and ignored any interest in the grantors of the complainant, and claimed the whole property as their own. Yet the complainant and its grantors continued to sleep upon whatever rights they may have had for a period of more than five times as long as that prescribed by the statute of limitations of the state in which the property is situate for the recovery of land in an action at law. It is not often that a stronger case is presented to a court of equity for the application of the doctrine of laches. Moreover, it affirmatively appears from the bill that during the many years that intervened between the commission of the alleged frauds and the bringing of the suit the condition of the property, as well as of the parties whose acts are complained of, have greatly changed, many of the latter having long since died, and are therefore not able to testify as to the truth or falsity of the alleged frauds.

In respect to the changed condition of the property, it appears from the bill that from the time of the application for the patent in the year 1869 to the month of January, 1900, no work of any character was done upon the property, during which long period of about 30 years

the complainant's grantors, as has been shown, commenced no suit in relation thereto, although well knowing that the whole thereof was held adversely to them. It is wholly unreasonable to attribute much, if any, value to the property during that period, under these circumstances. But the bill alleges that in January, 1900, the defendant F. A. Huntington took possession of the mine under claim of ownership of the whole of it, and commenced to work it, which he continued to do "at more or less infrequent intervals," without pecuniary profit, and at a loss; but it is averred that at the time of the commencement of the suit—February 7, 1903—the complainant's alleged undivided interest of 1,650 feet out of a total of 3,000 feet was of the value of more than $250,000, making the whole mine, with the defendant Huntington's work upon it, then worth nearly $500,000. This brings the case within the rule declared in Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Kinney v. Con. Va. M. Co., 4 Sawy. 382, Fed. Cas. No. 7,827.

The judgment is affirmed.