# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### SMITH v. SMITH.

(Circuit Court of Appeals, Ninth Circuit.  May 28, 1915.)

### No. 2448.

1. GUARDIAN AND WARD ☞165—SUIT TO SET ASIDE SETTLEMENT BY GUARDIAN—FRAUD.

   That a guardian, who had previously used his ward's money in payment of his own notes, bearing 9 per cent. interest, concealing such fact, obtained an order of the probate court, permitting him to borrow the money at 3 per cent., and settled his accounts on that basis, entitles the ward to relief in equity on the ground of fraud.

   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 531–537; Dec. Dig. ☞165.]

2. JUDGMENT ☞585—RES JUDICATA—IDENTITY OF CAUSE OF ACTION.

   An adverse judgment, in a suit by an heir to recover his share of property, sold by the executor and alleged to have been illegally purchased by his guardian in his individual right, is not a bar to a subsequent suit against the guardian to set aside his settlement on the ground of fraud and for an accounting.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1064, 1067, 1073, 1084, 1085, 1092–1095, 1132; Dec. Dig. ☞585.]

3. EXECUTORS AND ADMINISTRATORS ☞224—TIME FOR PRESENTATION OF CLAIMS—MONTANA STATUTE.

   Rev. Codes Mont. § 7525, providing that claims against the estate of a decedent shall be presented within 10 months after the first publication of notice to creditors, is limited to claims arising on contract and does not apply to a claim against the decedent for misappropriation of funds as guardian.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 768–788; Dec. Dig. ☞224.]

4. LIMITATION OF ACTIONS ☞ 85—ABSENCE FROM STATE—ACTIONS AGAINST EXECUTORS.

   Rev. Codes Mont. § 6458, which provides that the running of the statute of limitations shall not begin to run or shall be suspended during the time the person against whom a cause of action exists is absent from the state, applies to a cause of action against an executor or administrator.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 449–455; Dec. Dig. ☞85.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

224 F.—1

5. COURTS ⟨⟩375—FEDERAL PRACTICE—FOLLOWING STATE STATUTE OF LIMITATIONS.

    While a federal court of equity is not found by a state statute of limitations, on a question of laches it is proper for it to follow that statute, unless· facts are shown which render its application inequitable.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 983; Dec. Dig. ⟨⟩375.

    State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

    Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit in equity by William Smith against Mary M. Smith, as executrix of the will of John M. Smith, deceased. Decree for complainant (210 Fed. 947), and defendant appeals. Affirmed.

R. Lee Word and H. G. & S. H. McIntire, all of Helena, Mont., for appellant.

T. J. Walsh, C. B. Nolan, ·Wm. Scallon, and T. H. Hoolan, all of Helena, Mont., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The appellee brought a suit against the executrix of the will of his deceased guardian, alleging that the guardian in his lifetime had appropriated and converted to his own use the money of his ward; that the guardian· had presented to the court of his appointment accounts, including his final account, wherein he concealed his misappropriation of the ward's money, and thereby fraudulently procured the court to settle and allow his said accounts; and that thereafter, when the ward attained his majority, the guardian settled with him on the basis of such final account. The appellee alleged matter by way of excuse for his delay in bringing the suit. The prayer of his bill was that the decree of settlement be set aside, and that he recover from the appellant, as such executrix, the sum of $24,700, which was alleged to be the amount due the appellee upon a proper accounting. The answer denied conversion of the money and concealment and misrepresentation on the part of the guardian, and set up the defenses of res judicata, limitations, and laches. The court below, upon uncontradicted evidence, found facts which were sufficient to establish the charge that the guardian had appropriated to his own use funds of his ward. The court found the facts to be that in 1899 the estate of the appellee's deceased. father was in administration in the same court in which the guardian was subsequently appointed. The heirs of the estate were the appellee and his two sisters. The property of the estate was· sold at executor's sale, and was purchased by the guardian in his individual right for $85,000. To pay for the property he borrowed· money upon his notes, with interest at 9 per cent. per annum. Eighteen months later, upon his application, he was allowed by

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the court to borrow the funds of his wards then in his hands, amounting to $82,000, at interest at the rate of 3 per cent. per annum. The money so borrowed was used by the guardian to pay his notes upon which he was paying interest at 9 per cent. per annum. The appellee attained his majority in October 1906. The final account of the guardian was settled on December 14, 1906, showing a balance due the appellee of $23,954, which sum was paid him on December 15, 1906. The appellee at that time had no knowledge of the misuse of the funds by the guardian, but in August, 1907, his suspicions were aroused by information received from his sister. He then commenced in the superior court for the state of Montana a suit against the guardian, wherein he alleged that the purchase by the latter of the property of the estate was fraudulent, and prayed for his distributive share of said property and the accrued profits. In October, 1908, the guardian died at Battle Creek, Mich., and the appellant herein was, in November, 1908, appointed the executrix of his will, and was thereupon substituted as defendant in that suit. The cause was decided adversely to the appellee herein, and he appealed to the Supreme Court. The judgment was affirmed. Smith v. Smith, 45 Mont. 535, 125 Pac. 987. Thereupon the appellee moved for a rehearing in the Supreme Court on the ground that at least he was entitled to interest upon the money used by the guardian prior to the order of the court authorizing him to borrow it, and he asked that the suit be remanded, with leave to amend the complaint as a basis for such recovery. On November 14, 1912, the application was denied. On March 14, 1913, the appellee herein presented to the executrix his claim upon which the present suit is based, and thereafter, on May 17, 1913, he commenced the present suit. From the time when the appellee attained his majority until the time of the guardian's death the latter was within Montana but 6 months, and thereafter until the present suit was commenced the appellant, the executrix, was within Montana but 15 months. The appellant and the guardian were citizens of Montana, but at the time of the commencement of the suit the appellee had become a citizen of California.

[1] The court below found that the guardian had violated his duty to the ward in using the ward's money to pay his own debts and in failing to charge himself with the profits he thereby derived, and in concealing from the court in probate the fact that 18 months before he applied for leave to borrow the ward's money at the extremely low rate of interest of 3 per cent. he had already appropriated the money to the payment of his own obligations, on which he was obligated to pay interest at 9 per cent. There can be no question that that conclusion is fully sustained by the evidence, and that the court below was justified in decreeing the relief which was prayed for on the ground that the orders of the court in probate were procured by fraud Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870.

[2] We find no merit in the plea res judicata. The suit in the state court of Montana was brought solely to recover specific property and the profits accruing thereon. The judgment of the Supreme Court

establishing the validity of the sale determined all the issues in that suit. The court said:

"It may be that upon settlement of the guardian's accounts he should have been required to pay a greater rate of interest, and for a longer period of time, than was actually required of him, but that question is not before us."

[3] It is contended that the suit is barred for the reason that the appellee failed to present his claim to the executrix within 10 months from the first publication of her notice to creditors of the decedent to present their claims, as required by section 7522, Revised Codes. The provisions of that section, however, do not relate to a claim of the nature of that which is in controversy in this suit. Section 7525 declares:

"All claims arising upon contracts, whether the same be due, not due or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever."

This has been understood by the Supreme Court of Montana to relate only to claims arising upon contract. In Re Higgins' Estate, 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116, the court said:

"The creditor cannot maintain his suit under section 157, against an estate, unless he has presented the claim to the executor. And, by section 150, if the claim be one arising upon a contract, unless presented within the time limited in notice, it is barred forever, except under particular conditions."

The decisions in Melton v. Martin, 28 Mont. 150, 72 Pac. 414, and Dorais v. Doll, 33 Mont. 314, 83 Pac. 884, cited by appellant, are not authority for a different construction, because those were cases of claims arising upon contract. It is said that the statute of Montana was taken from that of California, and that before its adoption in Montana it had received a construction by the Supreme Court of California which would sustain the appellant's contention. We do not find, however, that prior to the adoption of that statute by the state of Montana the Supreme Court of California had construed the California statute in the form in which it was then formulated, and since its adoption by Montana it has been held in Hardin v. Sin Claire, 115 Cal. 460, 47 Pac. 363, that a claim based on a tort need not be presented against the administrator or executor before beginning an action thereon. Section 7532, Rev. Codes Mont., provides that no holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator. That statute was complied with in the present case. The appellee presented his claim before beginning the action.

[4] The principal question in the case is whether or not the plaintiff is barred by his delay in bringing the suit. In considering this question we inquire: First, what is the state statute of limitations in reference to such a cause of action? The statute of Montana (section 6449, Rev. Codes) provides that a suit shall be brought within two years for relief on the ground of fraud or mistake, the time to be computed from the discovery by the aggrieved party of the facts which constitute the fraud or mistake. Section 6458 provides:

"If when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after

his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

Section 6461 provides that:

"If a person against whom a cause of action exists, dies, without the state, the time which elapses between his death, and the expiration of one year, after the issuing, within the state, of letters testamentary or letters of administration, is not a part of the time limited for the commencement of an action therefor, against his executor or administrator."

The appellant invokes the rule that exceptions to the statute of limitations are to be strictly construed, and that implied and equitable exceptions are not to be ingrafted thereupon, where the Legislature has not made the exception in express words, and contends that the exception expressed in section 6458 refers only to the absent debtor against whom the action originally accrued, and not to his personal representative, and that therefore the time during which the executrix in the present case was without the state of Montana could not be excluded in computing the time within which an action should have been brought (citing State v. Clemens, 40 Mont. 567, 107 Pac. 896). In that case it was held that an exception to the statute of limitations cannot be enlarged beyond what its plain language imports, and that when invoked the case must clearly and unequivocally fall within it. It is to be observed, however, that the court in that case was dealing with a provision of the Penal Code, and in construing it was governed by section 8096 of that Code, which provides that all provisions thereof "are to be construed according to the fair import of their terms." In the present case we have to determine the meaning of a provision of the Civil Code, the construction of which is governed by section 6214 of that Code, which provides:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. The Code establishes the law of this state respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice."

In the case at bar the court below in the opinion said:

"At common law, neither absence from the realm nor death suspended the operation of limitations. This was an evil and tended to defeat justice, in that at such times there could be no service of process and no effective prosecution of a cause of action. The object of section 6458, supra was to furnish a remedy. The evil to be remedied and the object to be accomplished thereby attach no less to the case of absence of a personal representative than to the case of absence of a debtor. Prosecution to effect and justice are hampered equally in both cases. The reason for the statute is as potent in one as in the other. And though the literal reading of section 6458, supra, may support defendant's contention, it must yield to what must be assumed to have been the legislative intent, that is, to suspend limitations whenever absence from the state of the party defendant, be he debtor or personal representative, prevents effective prosecution of a cause of action" (citing Hayden v. Pierce, 144 N. Y. 512, 39 N. E. 638; Smith v. Arnold, 1 Lea [Tenn.] 378; and Wilkinson v. Winne, 15 Minn. 159 [Gil. 123]).

We concur in this view of the meaning and intention of the exception expressed in section 6458, the object of which was to afford a remedy in cases where, on account of absence of the defendant from

the state, obstacles might intervene to the successful prosecution of the plaintiff's right of action. We are of the opinion that the appellant here is within the plain meaning of the statute. The cause of action first accrued against the guardian; the time during which he was out of the state tolled, for that period, the statute of limitations. From and after the appointment of the executrix the cause of action was against her. She was the person against whom it had then accrued, and the time of her absence is to be excluded from the time limited for the commencement of such an action.

[5] While the court below sitting as a court of equity was not bound by the state statute of limitations, it was proper for it to follow that statute, unless facts were shown which rendered its application inequitable. In Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, Judge Sanborn said:

"The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. * * * When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case."

That doctrine has been applied in numerous cases. Broatch v. Boysen, 175 Fed. 702, 99 C. C. A. 278; Boynton v. Haggart, 120 Fed. 819, 57 C. C. A. 301; Cunningham v. Pettigrew, 169 Fed. 335, 94 C. C. A. 457; and Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154. In the case last cited, the court held that the doctrine of laches is an equitable principle, which is invoked to promote, but never to defeat, justice, and that it has no function where the analogous action of law is not barred, and no unusual conditions require its application. We find no conditions in the case at bar which are of such a nature as to constitute through the plaintiff's delay the defense of laches. The considerations which affect that defense are, generally speaking, whether the rights of innocent persons have intervened, whether the witnesses are dead or have disappeared, and whether the situation of the parties has changed to the defendant's prejudice. In McIntire v. Pryor, 173 U. S. 38, 59, 19 Sup. Ct. 352, 360 [43 L. Ed. 606] the court said:

"We do not wish to be understood as holding that the plaintiff, even in the case of actual fraud, may wait an indefinite time, or always so long as the statute of limitations would permit him to bring an action at law before asserting his rights; but where the fraud is clearly proven, the court will look with much more indulgence upon any disability under which the plaintiff may labor as excusing his delay."

The important distinction to be observed between the case at bar and the decision of this court in Newberry v. Wilkinson, 199 Fed.

673, 118 C. C. A. 111, is that in the latter case the statute of limitations at law had run, and the court was therefore dealing with a case which presented a prima facie presumption of laches. The court held that the plaintiff had not shown such facts and circumstances as to excuse his delay beyond the period fixed by the analogous statute of limitations, and that he did not show that the defendant's position was no worse by reason of the delay than it was previously, and the court pointed to certain facts in the case which it said tended to indicate that the delay had been prejudicial to the defendant.

The decree is affirmed.

ROSS, Circuit Judge (dissenting). John M. Smith, deceased, of whose estate the appellant is executrix, was, during his lifetime, the guardian of his brother's three children, the appellee (William Smith) and the latter's two sisters. William A. Smith was a brother of John M. Smith. Those two brothers were engaged in the sheep business in Montana, first as partners, but afterwards caused a corporation to be organized under the name of Smith Bros. Sheep Company, to which they transferred the property, each taking stock in the corporation therefor. Afterwards William A. Smith died, and in the course of time John M. Smith acquired the stock his brother had formerly owned, by purchase from the executor of the estate. In a suit subsequently brought in the court below by one of the daughters of William A. Smith that sale was adjudged by this court fraudulent and was annulled as to her upon certain terms. Those terms and all of the numerous facts and circumstances of the case will be found fully stated in the cases entitled Moore v. Smith et al., 182 Fed. 540, 105 C. C. A. 78, and Smith v. Moore, 199 Fed. 689, 118 C. C. A. 127. It is unnecessary to repeat them here. The brother of that complainant (appellee here) commenced a similar suit in one of the courts of the state of Montana to have set aside, as to him, the sale of the stock of the deceased, William A. Smith, in the Smith Bros. Sheep Company to John M. Smith, and upon the identical evidence that was introduced in his sister's suit the Supreme Court of Montana adjudged the sale without fraud and valid, and directed the dismissal of his bill. Smith v. Smith, 45 Mont. 535, 125 Pac. 987. Thereafter William Smith commenced the present suit in the court below, seeking the reopening of the accounts of his former guardian, John M. Smith, and to recover from his estate certain interest upon the money of his wards, alleged to have been appropriated by the guardian to his own use, the bill alleging, among other things, that the guardian received $82,174.20 of his wards' money, one-third of which was the property of the complainant, and all of which the guardian converted to his own use, 18 months after doing which he made application to the court in which the guardianship matter was pending to borrow the money of his wards at the rate of 3 per cent. per annum, not only concealing the fact of his misappropriation of that money 18 months before, but actually representing that he then had the money on hand, and that it would be a fair and safe investment of the money of the wards to allow him to borrow it at 3 per cent. per annum when the prevailing

rate of interest for money in the state at the time was 9 per cent., which application resulted in this order of the court:

"Probate Minutes, December, 1900.

"Tuesday, the Eleventh day of December, 1900.

"255. Estate and Guardianship of Wm. Smith et al., Minors.

"Max Waterman, counsel for guardianship, asked to have his name withdrawn as counsel in the case. N. B. Smith asked to have his name entered as counsel instead of the Max Waterman's. John M. Smith, the guardian of said minors, having made application to the court for an order authorizing him to borrow the funds in his hands belonging to said minors amounting to the sum of about $82,000 at the rate of three per cent. per annum.

"The court being fully advised in the premises: It is ordered that said guardian be authorized to borrow said sum of $82,000 at the rate of 3 per cent. per annum, and to so hold the same at said interest until the further order of this court.

"Order allowing guardian to use money of estate signed and filed.

"F. K. Armstrong, Judge."

The bill further avers that the guardian subsequently presented to the court various accounts, including his final account, in none of which did he disclose his misappropriation of the said money, nor any excuse for his failure to invest it for his wards' benefit, and in none of which did he charge himself with any interest thereon prior to the said order of the court purporting to authorize him to borrow it, thereby fraudulently procuring the settlement of the said final account by the court; that when the complainant attained his majority, his said guardian, John M. Smith, settled with him on the basis of the said final account so allowed and settled, thereby depriving the complainant of a large amount of interest justly due him. The bill also sets up excuses in avoidance of laches and prays that all orders and decrees of settlement of the guardian's account be held for naught, that a new account be stated, and that complainant have and recover from defendant, as the executrix of the estate of John M. Smith, the balance due thereon, alleged to be $24,700. The answer put in issue the averments of the bill in respect to the misappropriation and conversion of the money of the wards and the alleged concealment from and misrepresentation to the court, denied the alleged indebtedness to the complainant, and set up alleged insufficiencies in the bill, laches, and the state statute of limitations, and pleaded in bar of the action the decision of the Supreme Court of the state in the above-mentioned action brought therein by the complainant.

The evidence introduced upon the trial is without substantial conflict. It shows, among other things, that N. B. Smith was the executor of the estate of William A. Smith, and as such sold all of the stock owned by that estate in the Smith Bros. Sheep Company to John M. Smith for $85,000, and that John M. Smith was shortly thereafter appointed guardian of his brother's three minor children, including the complainant in this suit; that to pay for the stock John M. Smith borrowed from one of the Montana banks the money with which he made the purchase at the rate of 9 per cent. per annum; that after turning over the money to and receiving the stock from the executor, the latter redelivered $82,184.20 of it to John M. Smith, with which

he proceeded to pay the notes he had given the bank for the loan; that 18 months later he applied for and obtained the order of the probate court of December 11, 1900, by which, as has been seen, it was "ordered that said guardian be authorized to borrow said sum of $82,000 at the rate of 3 per cent. per annum, and to so hold the same at said interest until the further order" of the said court; that thereafter the said guardian presented to and filed in the said court various accounts, one of them being his final account, in not one of which did he mention his use of his wards' money to pay his own debts, and in not one of which did he charge himself with any interest thereon prior to applying for and obtaining the order of December 11, 1900. The accounts were settled by the probate court in utter ignorance, so far as appears, of the guardian's illegal use of his wards' money. The present complainant attained his majority in October, 1906, the final account of the guardian was settled December 14th of the same year, the balance of $23,954 thereby shown to be due the complainant being paid him the next day, and on the 27th day of the same month of December, 1906, the following decree was entered in the court in which the guardianship was pending:

"In the District Court of the Tenth Judicial District of the State of Montana, in and for the County of Meagher.

"In the Matter of the Estate and Guardianship of William Smith, Minor.

"It appearing that said estate and guardianship has been fully administered, and it being shown by the guardian thereof, by the production of satisfactory vouchers, that said guardian has paid all sums of money due from him, and delivered up under the order of the court all the property of the estate of the party entitled, and performed all acts lawfully required of him: It is ordered, adjudged and decreed that said guardian, John M. Smith, and his sureties be, and they are hereby, released and discharged from all liability to be hereafter incurred; that said estate is fully distributed, and the trust settled and closed.

"Dated this 27th day of December, 1906.

"E. K. Cheadle, Judge of the District Court."

When the complainant received from his guardian the balance shown by the latter's final account to be due, the complainant had no knowledge that the guardian had used his money prior to the order of the probate court authorizing him to borrow it, nor any knowledge of the concealments from and misrepresentations made to that court. The complainant's first information in regard to those matters came from his sister in or about the month of August, 1907, whereupon he commenced the suit already mentioned in the state court to set aside the alleged fraudulent sale to and purchase by the guardian, and to recover his distributive share of the property with accrued profits. The result of that suit being against the complainant, he is, of course, concluded by the final judgment in that cause to the full extent to which it goes. But the question involved in the present suit—the question as to the rate and the amount of interest the guardian should be held liable for during the time he had the use of his wards' money—was not involved in the complainant's suit in the state courts of Montana, as the Supreme Court of that state expressly declared in its decision in that case, saying:

"It may be that upon settlement of the guardian's accounts he should have been required to pay a greater rate of interest, and for a longer period of time, than was actually required of him, but that question is not before us."

That precise question is before us in the present suit; for very shortly after the final determination of his suit in the state court of Montana, in the fall of 1912, the complainant commenced the present one in the court below to reopen the said final account and to recover the amount of interest to which he alleges he is justly entitled, after having presented his claim therefor to the executrix of his guardian's estate and the rejection of that claim. Both ward and guardian, as well as the executrix of the latter's estate, were residents of the state of Montana, but it appears that from the time the complainant attained his majority until his guardian's death, the latter was within that state but 6 months, and that thereafter until the commencement of the present suit the defendant executrix was within the state of Montana but 15 months.

As to the merits of the suit I can see no doubt. That a guardian, whose relations to his ward are in the strictest sense fiduciary, cannot legally or honestly use his ward's money to pay his own debts, and especially when so used surreptitiously, is, to my mind, a proposition too plain for discussion. Had the guardian, when applying to the probate court of Montana for an order authorizing him to borrow his wards' money at 3 per cent. per annum, disclosed to that court that 18 months before he had already used it to pay his own debts, upon which he was paying 9 per cent. per annum to a bank, it is "inconceivable," as said by the court below, that the probate court of Montana would have made the order of December 11, 1900, hereinbefore set out in full, not only upon the most obvious principles of equity and fair dealing, but because of a statute of the state which, in part, reads as follows:

"Certain Transactions Forbidden.—Neither a trustee nor any of his agents may take part in any transaction concerning the trust in which he or any one for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary, except as follows:

"1. When the beneficiary, having capacity to contract, with full knowledge of the motives of the trustee, and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so.

"2. When the beneficiary, not having capacity to contract, the proper court, upon the like information of the facts, grants the like permission; or,

"3. When some of the beneficiaries having capacity to contract, and some not having it, the former grant permission for themselves, and the proper court for the latter, in the manner above described." Section 5376, Revised Codes of Montana.

It only remains to consider whether any of the technical defenses set up by the defendant are sufficient to defeat the complainant's cause of action.

The plea of res judicata is, as was held by the court below, obviously without merit; for the suit in the state court involved only the validity of the sale of the property of the wards and the alleged right of the complainant there to rescind and recover his proportion of the property, with accrued profits; while here the suit is based on the

alleged misappropriation by the guardian of the money received by him from such sale, and is brought to recover interest thereon as damages because of such fraud. And that no such question was involved in the complainant's suit in the state court of Montana was expressly declared by the Supreme Court of that state in the clause from its opinion above quoted.

The case showing that the demand of the complainant not having been presented to the executrix of the estate of the deceased, John M. Smith, within 10 months after the publication of notice to creditors, pursuant to the provisions of section 7522 and 7523 of the Revised Codes of Montana, it is contended that it was rightly rejected, and is barred by virtue of sections 7525, 7530, 7531, and 7532 of that code, which sections are as follows:

"Sec. 7522. Every executor or administrator must, immediately after his appointment, cause to be published in some newspaper in the county, if there be one, if not, then in such newspaper as may be designated by the court or judge, a notice to the creditors of the decedent, requiring all persons having claims against him to exhibit them, with the necessary vouchers, to the executor or administrator, at the place of his residence or business, to be specified in the notice; such notice must be published as often as the court or judge shall direct, but not less than once a week for four weeks; the court or judge may also direct additional notice by publication or posting. In case such executor or administrator resigns, or is removed, before the time expressed in the notice, his successor must give notice only for the unexpired time allowed for such presentation.

"Sec. 7523. The time expressed in the notice must be ten months after its first publication when the estate exceeds in value the sum of ten thousand dollars, and four months when it does not."

"Sec. 7525. All claims arising upon contracts, whether the same be due, not due or contingent, must be presented within the time limited in the notice, and any claim not so presented is barred forever; provided, however, that when it is made to appear by the affidavit of the claimant, to the satisfaction of the court or judge, that the claimant had no notice as provided in this title, by reason of being out of the state, it may be presented at any time before an order of distribution is entered; and, provided, further, that nothing in this title contained shall be so construed as to prohibit the right, or limit the time of foreclosure of mortgages upon real property of decedents, whether heretofore or hereafter executed, but every such mortgage may be foreclosed within the time and in the manner prescribed by the provisions of this Code, other than those of this title, except that no balance of the debt secured by such mortgage remaining unpaid after foreclosure, shall be a claim against the estate, unless such debt was presented as required by the provisions of this title."

"Sec. 7530. When a claim is rejected either by the executor or administrator, or the judge, the holder must bring suit in the proper court against the executor or administrator within three months after the date of its rejection, if it be then due, or within two months after it becomes due, otherwise the claim shall be forever barred.

"Sec. 7531. No claim must be allowed by the executor or administrator, or by the judge, which is barred by the statute of limitations. When a claim is presented to a judge for his allowance he may, in his discretion, examine the claimant and others on oath and hear any legal evidence touching the validity of the claim.

"Sec. 7532. No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against other property of the estate is expressly waived in the complaint; but no counsel fees shall be recovered in such action unless such claim be so presented."

As will be seen, the only one of the sections of the state statute relied upon by the appellant that declares claims not presented within the prescribed time to be forever barred is section 7525, which in express terms is limited to "claims arising upon contract." And I agree with the court below that the claim here in question did not arise upon or out of any contract, but wholly out of the alleged fraudulent conduct of the complainant's guardian, and as an obligation imposed, not by contract, but by law, equity, and good conscience.

Section 7530, supra, declares that where suit is not brought within a prescribed period after the rejection of the claim it becomes forever barred, but that provision is inapplicable to the present suit, since the latter appears to have been brought within the prescribed time after the rejection of the claim by the executrix.

Section 7532 declares, with an exception not pertinent here, that:

"No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator"

—but prescribes no other consequence for nonpresentation. In speaking of similar provisions of the Probate Practice Act of Montana, adopted in 1877, and reproduced in the Compiled Laws of that state of 1887, the Supreme Court of the state said, in the matter of the Estate of Higgins, 15 Mont. 474, 39 Pac. 506, 28 L. R. A. 116:

"The creditor cannot maintain his suit, under section 157, against an estate, unless he has presented the claim to the executor. And, by section 150, if the claim be one arising upon a contract, unless presented within the time limited in the notice, it is barred forever, except under particular conditions."

It is strenuously insisted, however, on behalf of the appellant, that as it is conceded that the complainant first learned of the alleged fraud of his guardian in August, 1907, and did not commence the present suit until May 17, 1913, it is barred by that provision of section 6449 of the statute of Montana which prescribes a period of two years for the commencement of an action for relief on the ground of fraud or mistake, computed from the aggrieved party's discovery of the facts constituting such fraud or mistake, as well as on the ground of laches, which courts of equity always give effect to in proper cases. In so far as the appellant's contention is based upon section 6449 of the Montana statute, prescribing a period of two years for the commencement of an action for relief on the ground of fraud or mistake, the counsel for the appellee cites in answer sections 6458 and 6461 of the same statutes, contending that the two-year period was thereby extended, in view of the agreed facts. Sections 6458 and 6461, and such stipulated facts, are as follows:

"Sec. 6458. If when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

"Sec. 6461. If a person against whom a cause of action exists, dies, without the state, the time which elapses between his death, and the expiration of one year, after the issuing, within the state, of letters testamentary or letters of administration, is not a part of the time limited for the commencement of an action therefor, against his executor or administrator."

The agreed facts referred to are that John M. Smith was absent from Montana during the whole of the month of December, 1906, and for the first 8 months of the year 1907, being within that state the last 4 months of 1907, and that during the succeeding year, 1908, he was within the state 2 months and absent therefrom the balance of that year until his death on the 6th day of October, 1908, at Battle Creek, Mich.; that the executrix, Mary M. Smith, was absent from the state of Montana during the months of November and December, 1908, and during the year 1909 she was absent during the months of January, February, March, April, October, November, and December, and was also absent for 7 months during the year 1910, and for 7 months during the year 1911, and during the whole of the year 1912, and was likewise absent therefrom during the first five months of 1913, and part of June of that year, during which month she returned to Montana. It is apparent that if the provisions of section 6458 above quoted are applicable to the appellant executrix, the present suit is not barred by the state statute of limitations. The court below sustained the contention of the counsel of the complainant in that behalf, saying in its opinion:

"It is defendant's contention that section 6458, supra, is an exception to the general statute of limitations, to be strictly construed, and not to include personal representatives of debtors, since they are not within its letter. If this be sound, the instant suit is barred. But it is the statute law of Montana that strict construction of statutes derogatory of the common law is abolished, and all statutes are to be liberally construed with a view to effect their objects and to promote justice. Section 6214, R. S. At common law, neither absence from the realm nor death suspended the operation of limitations. This was an evil, and tended to defeat justice, in that at such times there could be no service of process and no effective prosecution of a cause of action. The object of section 6458, supra, was to furnish a remedy. The evil to be remedied and the object to be accomplished thereby attach no less to the case of absence of a personal representative than to the case of absence of a debtor. Prosecution to effect and justice are hampered equally in both cases. The reason for the statute is as potent in one as in the other. And though the literal reading of section 6458, supra, may support defendant's contention, it must yield to what must be assumed to have been the legislative intent, that is, to suspend limitations whenever absence from the state of the party defendant, be he debtor or personal representative, prevents effective prosecution of a cause of action. And so are the cases Hayden v. Pierce, 144 N. Y. 512, 39 N. E. 638; Smith v. Arnold, 1 Lea (Tenn.) 378; Wilkinson v. Winne, 15 Minn. 159 (Gil. 123). And see French v. Davis, 38 Miss. 218; Cotton v. Jones, 37 Tex. 34."

Whether the court below was right in its ruling in that regard, in view of the construction placed on section 6458 of the statutes of Montana by the Supreme Court of that state in the case of State v. Clemens, 40 Mont. 567, 569, 107 Pac. 896, I find it unnecessary to decide, because of the view I take of the laches of the complainant, set up by the defendant in defense of the suit. The complainant admits that he first learned of his guardian's fraud in August, 1907, which was long after he had attained his majority, and yet he did not commence the present suit until May 17, 1913, a period of nearly six years. In a very similar case (Newberry v. Wilkinson, 199 Fed. 673, 118 C. C. A. 111) we held that a delay for a much shorter period constituted

such laches as precluded a recovery; in that case the delay being less than four years.

"A court of equity," said Lord Camden, "has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there has always been a limitation to suits in this court." Smith v. Clay, 3 Brown's Chy. 639, note.

This doctrine has been repeatedly recognized and acted upon by the Supreme Court. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942, 34 L. Ed. 424, and cases there cited. See, also, Socrates Quicksilver Mines v. Carr Realty Co., 130 Fed. 293, 64 C. C. A. 539; Galbes v. Girard (C. C.) 46 Fed. 500.

It is said, however, in support of the judgment below, that the complainant's long delay in bringing the present suit is excused by the fact that within a reasonable time after the discovery of the fraud on the part of his guardian he brought suit in a court of the state of Montana to vacate the sale of his stock, and to recover the property with accrued profits, and that because he was there trying to get the state court to decide that case in his favor, this court of equity should not count against him the years he was there litigating, when he brings before it a right which confessedly was not involved in that suit. I am not able to so hold and therefore think the judgment appealed from should be reversed and the cause remanded, with directions to the court below to dismiss the suit.