12763

BAILEY, JUDGE OF PROBATE, *ET AL.* v. COOLEY *ET AL.*

(150 S. E., 473)

81

*Messrs. S. M. Wolfe,* and *B. F. Martin,* for appellants,

*Messrs. Allen & Doyle,* for respondents,

November 14, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This action was commenced by service of the summons and the complaint on the defendants during the month of May, 1928. The several defendants answered the complaint and at the same time served notices of demurrer. By agreement the demurrers were heard at chambers by the Circuit Judge, Hon. M. L. Bonham. The demurrers were based upon two grounds, as therein set forth, and were sustained on the sole ground that the action constituted a collateral attack. From the order of Judge Bonham the plaintiffs appeal to the Supreme Court, and the appeal involves the single question of practice, to wit: Can the action, as set out in the complaint, be maintained in the Court of Common Pleas, or is it necessary that direct proceeding be brought in the original action for accounting in the Court of Probate?

Judge Bonham's order states the case, and his order will be reported. In addition to the cases cited by him, his position is sustained by the following authorities: *Turner v. Malone,* 24 S. C., 398; *Connor v. McCoy,* 83 S. C., 165, 65 S. E., 257; *Bradley v. Calhoun,* 116 S. C., 7, 106 S. E., 843; *Wolfe v. Bank of Anderson,* 123 S. C., 208, 116 S. E., 451; *Ray v. Pilot Insurance Co.,* 128 S. C., 323, 121 S. E., 779.

Fraud while forming a sufficient ground for direct attack on a judgment, does not justify a collateral attack thereon. Thus in *Van Fleet's Collateral Attack,* at page 579, it is stated: "The final settlement of an administrator or guardian is not void for fraud, nor because he allowed a fraudulent claim, nor because the report was false and fraudulent, nor because he fraudulently withheld assets and converted them to his own use, nor because the sales of property were fraudulent and made for his own benefit." See, also, 15 R. C. L., 855.

"A party to a judgment cannot be permitted in equity any more than at law collaterally to impeach it on the ground of mistake or fraud. \* \* \* Fraud perpetrated by a party in procuring a judgment does not render it absolutely void, but is only cause for having it declared void in a proceeding instituted for that purpose and in proper time, as between parties and privies." Note, 79 Am. Dec., 752.

"A judgment of the Probate Court appointing a guardian, regular on its face, cannot be collaterally attacked on the ground of fraud, collusion or other matter aliunde." Note, 11 L. R. A., 160.

All exceptions are overruled, and judgment affirmed.

Messrs. Justices Blease, Stabler and Carter concur.

Mr. Justice Cothran dissents.

Mr. Justice Blease (concurring) : I concur in the opinion of Mr. Chief Justice Watts. The authorities cited by the Chief Justice and in the order of Judge Bonham, and many others that might be cited, sustain the proposition that the Court of Common Pleas and the Probate Court have concurrent jurisdiction in matters of this kind, and the one which first acquires jurisdiction will maintain jurisdiction to the end, and the other will decline to entertain jurisdiction. There can be no doubt but that, when the Probate Court adjudged John B. King *non compos mentis* and appointed a committee for him, it acquired Jurisdiction of him and of his estate. There is no intimation that he has since been adjudged sane. The authorities are clear that when a person is

adjudged insane, or *non compos mentis*, that status is presumed to continue until the contrary is made affirmatively to appear. If King was insane at the time of the alleged settlement in the Probate Court, of course, his receipt and the purported settlement are void.

When a person is adjudged insane, or *non compos mentis*, and a committee is appointed to take charge of his estate, it would seem that in an orderly administration of his estate it would be necessary for such person to be adjudged sane before a settlement should be made and approved by the Court. The presumption, therefore, is that the case is still pending in the Probate Court. That Court has jurisdiction to properly settle the estate, and, in my opinion, the Court of Common Pleas should not interfere, except by way of review, as provided for by law.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : This is an appeal from an order of his Honor, Judge Bonham, sustaining a demurrer to the complaint upon the ground that the matters complained of had been adjudicated in the Court of Probate, and that the only relief which the party affected by that adjudication might be entitled to can only be obtained in that Court, by a direct proceeding in the cause then before that Court.

The allegations of the complaint, which for the purposes of the demurrer are taken to be true, are in substance as follows, stated in narrative form :

In March, 1921, the plaintiff John B. King was adjudged by the Court of Probate of Anderson County a person of unsound mind, and the defendant H. Vance G. Cooley, his brother-in-law, was duly appointed his guardian and committee. Cooley qualified by giving a bond in the sum of $10,-000, with the defendant United States Fidelity & Guaranty Company as surety.

In April, 1924, Cooley made application for his discharge as guardian and committee to the Court of Probate, and supported his application by an alleged accounting of receipts

and disbursements of the estate. Accordingly an order was passed by the Court of Probate approving the accounting and granting a discharge. Whereupon Cooley turned over to King the estate on hand and induced him to sign an acquittance and receipt therefor. The complaint alleges that King, at the time of the execution of said acquittance and receipt, which was executed on the same day that the accounting was submitted, had not had an opportunity to intelligently or properly digest or examine the same or to ascertain its correctness, and that he was not legally qualified to execute it; that Cooley took advantage of his relationship, imposed upon the confidence of King, who was unable to properly protect himself by detecting the fraud which was being perpetrated upon him.

The particular acts of fraud alleged were: The inclusion of erroneous and fraudulent entries in the accounting, in that certain items of disbursements in fact were duplications, double charges against the estate, and the omission of the value of 150 bales of cotton, which belonged to the estate, and which were stored by Cooley as guardian and committee, the receipts for which were turned over wrongfully by Cooley to Lee G. Holleman, president of People's Bank of Anderson, who hypothecated them, and by such hypothecation the cotton has been lost to the estate.

The prayer of the complaint is as follows: "Wherefore plaintiffs pray (1) that the said H. V. G. Cooley be required to come into this Court and make a full, satisfactory and complete return and accounting for his acts in the particulars alleged; (2) that the plaintiffs have judgment on the bond for such amount found to be in default under such proper accounting."

Unquestionably upon these facts the ward is entitled to *some* relief. The question is whether he has adopted the proper form of relief in bringing this action in the Court of Common pleas, the manifest object of which is to declare the accounting, settlement, and discharge adjudicated by the Court of Probate void, as the result of fraud upon the part

of the committee, instead of applying to the Court of Probate, in the main proceeding, for an order setting aside the foregoing adjudication upon the same grounds now presented.

There can be no controversy over the proposition that, when a Court has complete jurisdiction of a cause and renders judgment therein, its judgment cannot be collaterally attacked in another Court upon the ground of fraud in the procurement of the judgment; the only grounds of attack collaterally are that the Court rendering the judgment was without jurisdiction of the parties or subject of the action and the assertion of the fact *nul tiel* record. The authorities cited in the opinion of the Chief Justice amply support this proposition. The vital question, however, is whether the present proceeding can be considered a *collateral* attack upon the judgment, or rather the adjudication, of the Court of Probate. I do not think so, but am of opinion that it is as *direct* an attack as could possibly be conceived.

In 1 Freeman, Judg. (3d Ed.), § 305, it is said: "Litigants of course, must be provided with some remedy to gain relief from an erroneous or unwarranted judgment. And in recognition of such necessity, the law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the Court's decision. If he so wishes, he may seek relief from the judgment by some timely move in the Court rendering it *or* have recourse to some authorized mode of review by an appellate tribunal, *or under certain circumstances procure a setting aside or annulment of the judgment by a Court of Equity.*"

"This being true, it is but reasonable to conclude that an assailant is pursuing a very direct attack when he strikes at the judgment with one of the procedural weapons thus placed at his disposal, and *per contra,* that his assault is essentially collateral when attempted without such legal means." 1 Freeman, Judg. (3d Ed.), p. 606.

"If instituted for the very purpose of setting aside, correcting or modifying the judgment, it is usually regarded as

a direct attack. * * * " 1 Freeman, Judge. (3d Ed.), p. 607.

At Section 1184, it is said:

"With the possible exception of probate of wills, a Court of Equity may in the exercise of its general equitable jurisdiction grant relief from the Probate orders and decrees upon the same grounds and conditions as from the judgment of other Courts. Equity may compel restoration of lands or property fradulently acquired in Probate proceedings. The fact that the Probate Court is accorded exclusive jurisdiction in the first instance does not, at least with respect to most of its orders, differentiate it from any other Court possessing exclusive jurisdiction over matters entrusted to it. Nor is the general rule abrogated by statutes purporting to make decrees and orders of Courts of Probate conclusive, since they merely place the determinations of these Courts on the same footing as the judgments of other Courts without interfering with the power of Equity in proper cases to give relief from them. Sometimes statutes specifically provide for equitable relief, as for mistakes in final settlement of accounts, but statutory authority is not necessary in such cases.

"The general rule has been applied to various orders and decrees, such as those appointing or discharging administrators, or settling accounts of personal representatives and guardians, orders approving claims, orders of sale, orders setting apart a homestead, and decrees of distribution.

"But in all these cases Equity may be resorted to only upon a sufficient showing of some ground for the exercise of equitable jurisdiction such as mistake or extrinsic fraud and not merely to review the action of the Probate Court. 'The Courts of chancery have no power to take such cases out of Probate Courts for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident and mistake, or impending irremediable mischief is universal, extending over suitors in all of the Courts.' "

And in Section 1234:

"If an administrator suppresses the receipt of a sum of money obtained by him for the benefit of the estate, and thereby causes his accounts to be closed without his being charged with that sum, they will be reopened in Equity on the ground of fraud, although the statute declares the decree of accounting final and conclusive."

And in Section 1235:

"The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud for which Equity may afford relief from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony and this is true whether such fraud be regarded as extrinsic or as an exception to the extrinsic fraud rule."

In *Pickens v. Merriam* (C. C. A.), 242 F., 363, the action was by certain heirs against the administrator for an accounting of certain assets fraudulently omitted from the decree of distribution in the Court of Probate. The defendant demurred upon the ground that all inquiry into the alleged fraud was precluded by the final decree of distribution. The demurrer was sustained by the trial Court, but upon appeal his order was reversed. It was held, quoting syllabus:

"The action was not barred by the proceedings in or decree of the Probate Court wherein the administrator had accounted, where by reason of the conduct of defendants in concealing the facts concerning the estate there had been no adversary trial or decision upon the issues involved in such suit."

And: "The settlement of an administrator's account by the decree of a Probate Court does not conclude as to property accidentally or fraudulently withheld from the account."

The Court said in the opinion:

"How far such a hearing may go is indicated in the case of *Griffith v. Godey*, 113 U. S., 89, 5 S. Ct., 383, 28 L. Ed., 934, where Mr. Justice Field, delivering the opinion of the Court, said : 'It is well established that a settlement of an administrator's account, by the decree of a Probate Court, does not conclude as to property accidentally or fraudulently withheld from the account. If the property be.omitted by mistake, or be subsequently discovered, a Court of Equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the Probate Court might, in such case, open its decree and administer upon the omitted property; and a fraudulent concealment of property, or a fraudulent disposition of it, is a general and always existing ground for the interposition of Equity.'

Prior to the commencement of the action the plaintiffs had brought a similar action in the Kansas Courts to have the settlement in the Court of Probate of certain property in that State set aside for fraud, and for an accounting by the administrator of property with which he was alleged to be chargeable. A demurrer to the complaint was overruled and upon appeal the order was sustained. *Pickens v. Campbell*, 98 Kan., 518, 159 P., 21.

"The fraudulent concealment or omission of facts, by a fiduciary, the revealing of which would have caused the entry of the judgment in favor of the *cestui que* trust, is fraud which will induce a Court of Equity, in an independent suit, to relieve against a judgment or order that is unjust to the *cestui que* trust. *Smith v. Smith* (1914 [D. C].), 210 F., 947, affirmed in (1915), 139 C. C. A., 465, 224 F., 1; *Sohler v. Sohler* (1902), 135 Cal., 323, 87 Am. St. Rep., 98, 67 P., 282; *Campbell-Kawannanakoa v. Campbell* (1907), 152 Cal., 201, 92 P., 184; *Burnett v. Milnes* (1897), 148 Ind., 230, 46 N. E., 464; *Bowsman v. Anderson* (1912), 62 Or., 431, 123 P., 1092, rehearing denied in (1912), 62 Or., 444, 125 P., 270; *Schneider v. Sellers*

(1900), 25 Tex. Civ. App., 226, 61 S. W., 541." Note to *Laun v. Kipp* (Wis.), 5 A. L. R., 655.

In *Smith v. Smith* (D. C.), 210 F., 947, 951, the Court said:

"It is the contention of the defense, however, that the order and the decree of settlement of the guardian's accounts and his discharge are conclusive and forbid any relief herein to complainant. It is true that decrees of a State Court in Probate, though in their nature *ex parte,* there being in fact no adversary proceedings, are generally conclusive, but, like all other decrees, judgments, and proceedings, they may be attacked and set aside, or rendered inoperative, when procured by fraud. The party thereto against whom they operate is not estopped from obtaining in a Court of Equity relief from them. It may be such relief could be procured in the Court of their origin, by complainant in the instant suit in the State Court of the decrees involved, but that is no reason why another Court, this Court in the instant suit by virtue of its equity jurisdiction and attaching by reason of diverse citizenship of the parties, may not and is not bound to give relief according to the recognized rules of equity."

In *Glover v. Brown,* 32 Idaho, 426, 184 P., 649, 652, the Court said:

"The validity of Probate proceedings may be attacked for fraud, and the jurisdiction of a Court of Equity to compel restoration of lands or proceeds fraudulently acquired by such proceedings is clear. *Rhino v. Emery,* 72 F., 382, 18 C. C. A., 600; *Johnson v. Waters,* 111 U. S., 640, 4 S. Ct., 619, 28 L. Ed., 547; *Arrowsmith v. Gleason,* 129 U. S., 86, 9 S. Ct., 237, 32 L. Ed., 630; *McDaniel v. Traylor,* 196 U. S., 415, 25 S. Ct., 369, 49 L. Ed., 533; *Griffith v. Godey,* 113 U. S., 89, 5 S. Ct., 383, 28 L. Ed., 934."

In *Bruski v. Bruski,* 148 Minn., 458, 182 N. W., 620, the syllabus is as follows:

"Relief from a decree of the Probate Court which was obtained by fraud * * * may be had by an action in Equity in the district Court."

In *Stocks v. Stocks,* 179 N. C., 285, 102 S. E., 306, the syllabus is as follows:

"A decree of a Court having jurisdiction in a proceeding in all respects regular on its face as to parties cannot be attacked collaterally, but it may be successfully impeached for fraud in an independent action brought for the purpose, when sufficient allegations of fraud are made, and issues framed upon such allegations are submitted to a jury, and the fraud is established by the verdict."

See extended note, L. R. A. (N. S.), 1918-D, 470.

The case of *Connor v. McCoy,* 83 S. C., 165, 65 S. E., 257, cited by respondent, and the cases cited in that case, do not at all involve the power of the Court of Equity as hereinbefore referred to.

For these reasons, I think that the order appealed from should be reversed.