In Re SMITH'S ESTATE. SMITH, Respondent, *v.*
SMITH, Executrix, Appellant.

(No. 4,346.)

(Submitted April 15, 1921. Decided June 20, 1921.)

[199 Pac. 696.]

*Judgments—Res Adjudicata—Executors and Administrators—
Claims Against Estates—When Established—Courts—Privies.*

Judgment—Federal Court—Res Adjudicata—Claims Against Estate—Payment.

1. Plaintiff brought action in the United States district court to recover interest due from an estate on money belonging to plaintiff and used by decedent in his lifetime while acting as plaintiff's guardian. Defendant interposed the defenses of the statute of limitations, laches and noncompliance with the statute of nonclaim. Judgment for plaintiff was affirmed on appeal to the circuit court of appeals. Basing his claim upon the judgment thus obtained, plaintiff made demand upon the executrix for payment. The executrix submitted her final report to the state district court and petitioned for distribution of the estate and payment of outstanding claims, stating that the claim of plaintiff had not been paid. A beneficiary of decedent filed objections to payment of plaintiff's claim on grounds the same as those urged in the federal

(276)

[60 Mont. 276.]

court. A trial was had in the district court sitting in probate, evidence heard and judgment rendered for plaintiff. *Held,* that the questions raised by the objections were foreclosed by the judgment of the federal court, that the judgment of that court was conclusive under the doctrine of *res adjudicata,* and that the action of the trial court in again trying the same question determined by the federal court was error.

Same—State Court's Refusal to Give Effect to Judgment of Federal Court—Federal Question.

2. Where a state court refuses to give effect to a judgment of the federal court upon a point in dispute and within its jurisdiction, a federal question arises under the laws of the United States establishing the circuit court and vesting it with jurisdiction.

Same—Against Executors and Administrators—Establishment of Claim Against Estate.

3. A judgment against an executor or administrator upon a claim against the estate establishes the claim to be paid in due course of administration.

Same—Against Executors and Administrators—Binding upon Whom.

4. A judgment against the executor or administrator of an estate is in effect a judgment against the estate, and all persons interested in the estate, whether they be heirs, legatees or creditors, as privies are foreclosed by it on the merits of the claim.

Same—Who are Privies.

5. Privies are those who are so connected with the parties in estate, or blood or in law, as to be identified with them in interest, and consequently to be affected with them by the litigation, such as heir and ancestor, executor and testator, etc.

Same—What Deemed Adjudicated.

6. A right, question or fact, distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies.

Same—Decisions of Appellate Courts—Conclusiveness.

7. The judgments of appellate courts are as conclusive as those of any other courts, and they not only establish facts, but also settle the law, so that the law as decided upon any appeal must be applied in all the subsequent stages of the cause.

Same—Conclusiveness of Federal Judgment.

8. The judgment or decree of a federal court is binding and perfect between the parties until reversed, without regard to any adverse opinion or judgment of any other court of merely concurrent jurisdiction, and its integrity, validity and effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action or of a defense, either by plea or in proof, as it would be in any other circumstances.

*Appeal from District Court, Meagher County; John A. Matthews, Judge.*

---

5. Conclusiveness of judgment against persons not parties to the action, see note in 2 **Am. St. Rep.** 876.

IN THE MATTER of the estate of John M. Smith, deceased. From an order dismissing the contest of J. Stanley Smith against a claim of William Smith, Gertrude Mayn Smith, as the executrix of the estate of J. Stanley Smith, deceased, appeals. Affirmed.

*Mr. H. G. McIntire*, for Appellant, submitted a brief and argued the cause orally.

In the lower court it was contended by counsel of William Smith that the judgment of the United States court allowing his claim so far adjudicated the claim that its merits could not be further inquired into. The lower court rejected this contention.

Is the judgment of the federal court allowing respondent's demand so far *res adjudicata* and binding on the appellant as to estop her from urging the present objections and exceptions to the same? Is such a federal question presented by such judgment as will preclude this court from inquiring into the validity of the objections urged against the allowance of said demand? Is not such demand, under the Montana statutes, one that the executrix of John M. Smith, deceased, cannot legally recognize and allow?

In a settlement of the accounts of an executor the widest latitude, together with the right of amendment, is allowed. It is the duty of the court, in probate, to scrutinize carefully every item, and, even in the absence of specific objections, to disallow such items as are not warranted by law. (*Estate of More*, 121 Cal. 635, 54 Pac. 148; *Estate of Willey*, 140 Cal. 243, 73 Pac. 998.)

Section 7536, Revised Codes, provides that a judgment rendered against an executor "only establishes the claim in the same manner as if it had been allowed by the executor * * * and a judge [in other words, as though it had been originally allowed in pursuance of sections 7528 and 7529]; and the judgment must be that the executor * * * pay in due course of administration the amount ascertained

to be due * * * . No execution must issue upon such judgment nor shall it create any lien upon the property of the estate, or give to the judgment creditor any priority of payment.''

In view of the above and the provisions of sections 7647 and 7648, it is apparent that such a judgment is not conclusive but may be attacked by any heir or person interested in the estate, in which category appears appellant's testator, both as son of the deceased John M. Smith and as a legatee under his will. This has been many times decided both by this court and the supreme court of California in construing the same statute. (*In re Mouillerat's Estate*, 14 Mont. 245, 36 Pac. 185; *In re Barker's Estate*, 26 Mont. 282, 67 Pac. 941.) True, in neither of these two cases was there a claim which had been allowed by the judgment of a court in pursuance of Revised Codes, section 7536, but in the light of that statute, this cuts no figure. (*Hall* v. *Cayot*, 141 Cal. 13, 74 Pac. 299; see, also, Church on Probate Law and Practice, 759.)

J. Stanley Smith, and consequently his executrix, was in no wise estopped by the judgment· in the federal court allowing the said claim of William Smith, because: 1. He was not a party to the proceedings in said suit. To be estopped by a judgment, an essential prerequisite is that the party sought to be estopped was a party to the proceedings in which the judgment was rendered; 2. A party interested in an estate is given the right by statute to contest allowed claims (Rev. Codes, secs. 7647, 7648), hence he cannot be estopped by reason of the allowance of the claim; 3. The authorities directly hold he is not estopped. (1 Church on Probate Law, p. 759; *Hall* v. *Cayot*, 141 Cal. 13, 74 Pac. 299; *Estate of More*, 121 Cal. 635, 54 Pac. 148; see, also, note on pages 124 and 125 of 65 American Decisions; 2 Black on Judgments, 610, 938.)

Is any federal question involved in the present controversy by reason of the judgment of the federal court allowing the claim now objected to? The federal court, Judge Bourquin,

explicitly decided that there was not, in remanding the present proceeding to the state court, and that he was clearly right in so holding is abundantly borne out by the federal authorities. The precise point has been decided by the supreme court of the United States in the case of *Leather Mfg. Bank* v. *Cooper*, 120 U. S. 778, 781, 30 L. Ed. 816, 7 Sup. Ct. Rep. 777 [see, also, Rose's U. S. Notes]; and see, also, *Security Trust Co.* v. *Black River & Co.*, 187 U. S. 211, 47 L. Ed. 147, 23 Sup. Ct. Rep. 52; *Newberry* v. *Wilkinson*, 199 Fed. 673, 118 C. C. A. 111.

The effect, the weight, to be given to the judgment of the federal court allowing this claim is that and that only which should be given to the judgment of a state court in a similar case and under like circumstances. (2 Black on Judgments, sec. 938.) The trouble with counsel for claimant is that they are endeavoring to have given greater effect and weight to this allowance than could possibly be given to a judgment of the supreme court of the state in a like case, a contention founded on neither law nor reason. Of course, this court should and will give such effect to that allowance as would be given to a judgment of a state court in a like case, but no more.

Not being estopped by the action of the federal court, the contestant has the unquestionable right to make use of testimony adduced in that court. What conclusion the state court should draw from such testimony concerns itself alone. It cannot be hampered or controlled by the opinions of judges of any other tribunal. Nor are such opinions in anywise conclusive on this court. The duty of this court to construe the state statutes cannot be avoided because another tribunal has assumed that function. And that both the federal district court and the circuit court of appeals fell into error in the allowance of this claim, we submit, will be abundantly shown, and we add the comment of this court: "We approach the final determination of the case with the greatest respect for the decision of the learned judges of the circuit court of appeals. Nevertheless it is our duty to decide it in conformity with

the dictates of our own consciences." (*Smith* v. *Smith*, 45 Mont. 535, 125 Pac. 987.)

*Messrs. Walsh, Nolan & Scallon,* for Respondent, submitted a brief; *Mr. Wm. Scallon* argued the cause orally.

There is a federal question. The question whether a state court has given due effect to the judgment of a court of the United States is a question arising under the Constitution and laws of the United States. We note that appellant seems to confuse the matter of the existence of a federal question with the merits of that same question. The authorities to be referred to make clear that a federal question exists when the question arises of whether the state court has given due effect to the judgment of a court of the United States, and that a federal question then arises, even though its ultimate determination depends upon consideration of state law. Before proceeding to present the authorities, we shall make reference to Judge Bourquin's ruling on the motion to remand. The only remarks appearing in the opinion filed by him which might seem to express the view that there is no federal question is the following: "It may be observed a federal judgment is entitled to only the consideration given to a like state court judgment, a question of state law," citing *Crescent City Live Stock etc. Co.* v. *Butchers' Union Slaughter-house etc. Co.*, 120 U. S. 147, [30 L. Ed. 614, 7 Sup. Ct. Rep. 472], and the words, "This is not a 'federal question' within the Removal Act." Neither of these remarks constitutes a determination that no federal question was involved. It seems to mean that the particular point to which the remark is addressed involves a question of state law. That might be perfectly true, and yet a federal question might still exist. The observation regarding federal judgments is merely a statement of a general principle. The case of *Metcalf* v. *Watertown*, 128 U. S. 586, 32 L. Ed. 543, 9 Sup. Ct. Rep. 173, referred to by Judge Bourquin, simply showed that a suit brought to recover the amount of a judgment previously obtained in a federal court does not,

[60 Mont. 276.]

because of the fact that the suit is brought upon such a judgment, present a federal question which would give a federal court jurisdiction. The case referred to is that of *Metcalf* v. *City of Watertown.* The reference made by Judge Bourquin to 120 U. S. 141, 30 L. Ed. 614, 7 Sup. Ct. Rep. 472, is to the *New Orleans Slaughter-house Cases, viz., Crescent City etc. Co.* v. *Butchers' Union etc. Co.* The supreme court there said, quoting from a former case: "No higher sanctity or effect can be claimed for the judgment of the circuit court of the United States rendered in such a case, under such circumstances, than is due to the judgments of the state courts in a like case and under similar circumstances." That quotation was from the case of *Dupasseur* v. *Rochereau,* 88 U. S. 130, 22 L. Ed. 588, 590. In each of these cases it was expressly held that the question of whether " * * * a state court has given due effect to the judgment of a court of the United States is a question arising under the Constitution and laws of the United States * * * ." (See *Crescent City Live Stock etc. Co.* v. *Butchers' Union Slaughter-house etc. Co.,* 120 U. S. 141, 30 L. Ed. 617, 7 Sup. Ct. Rep. 472.) And Judge Bourquin says that if the judgment is not given the proper effect, this will be denial of a federal right, reviewable by the United States supreme court. He was dealing only with a question of removal and his remarks were directed to that. The merits of the federal question were not argued by us on the motion to remand, because they were not material. The only discussion was as to the existence of such a question, and the judge said there may be such a question involved in the case, but not "within the Removal Act," and it does not give a right to remove. Now, however, the question is presented to this court: What is the effect of the judgment of the federal court in the case of the claimant, William J. Smith, against Mrs. Mary M. Smith, executrix?

We make the point that while, as a general rule, a judgment of a federal court stands upon a similar footing as that of a state court, this is true on the condition that the determination

of the state court is, in effect, treated as a judgment. If it is not treated as a judgment, if it is not a judgment at all, the rule can no longer apply. There is then nothing to compare with. There is a state ruling, but no judgment. No such condition was present in any of the cases referred to in Judge Bourquin's decision, or in any case found by us. Said cases and others were reviewed by the United States supreme court. In *Southern Pacific R. Co.* v. *United States,* 168 U. S. 1, 42 L. Ed. 355, 18 Sup. Ct. Rep. 18, the court speaking of the effect of a judgment as *res adjudicata,* said: "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

We make the further point that state legislation cannot deprive a final judgment of a federal court of the essential attributes of a judgment. If it may do so, directly or indirectly, then the provisions of the Constitution of the United States—the supreme law of the land—giving to federal courts jurisdiction of controversies between citizens of different states, may be largely, if not wholly, nullified.

If a decision against an executor is not final as to anything, it is not a judgment at all. Under the California decisions that is the character of such a decision. The result is that the so-called judgment is not a judgment. Finality as to parties and privies is of the essence of a judgment. Without finality there is no judgment, in the proper sense of the term. Establishing a *prima facie* case is not rendering a judgment. That may be a finding or a ruling, or what not, but it is not a judgment, in the true sense. Section 6710, Code of Civil Procedure, provides: "A judgment is the final determination

of the rights of the parties in an action or proceeding.''
These propositions seem self-evident.

Therefore, we submit that a state cannot, by legislation
affecting proceedings in its own courts, change or control the
jurisdiction or powers or judgments of courts of the United
States. It cannot convert these courts into mere chambers or
commissions of investigation or advice. Neither can the juris-
diction and powers of federal courts in matters of claims
against estates, of rights of heirship and kindred subjects, be
so restricted or controlled. (*Lawrence* v. *Nelson,* 143 U. S. 215,
36 L. Ed. 130, 12 Sup. Ct. Rep. 440; *Hayes* v. *Pratt,* 147
U. S. 557, 37 L. Ed. 279, 13 Sup. Ct. Rep. 503; *Bover* v.
*Chapman,* 119 U. S. 587, 30 L. Ed. 532, 7 Sup. Ct. Rep. 342;
*Hess* v. *Reynolds,* 113 U. S. 73, 28 L. Ed. 927, 5 Sup. Ct. Rep.
377 [see, also, Rose's U. S. Notes].) In *Lawrence* v. *Nelson, su-
pra,* it is said: '' * * * The general equity jurisdiction of
the circuit court of the United States to administer, as between
citizens of different states, the assets of a deceased person
within its jurisdiction cannot be defeated or impaired by laws
of a state undertaking to give exclusive jurisdiction to its own
courts.''

The limitations of the rule are stated in *Byers* v. *McAuley,*
149 U. S. 608, 37 L. Ed. 867, 13 Sup. Ct. Rep. 906; *Yonley*
v. *Lavender,* 88 U. S. 276, 22 L. Ed. 536. There is nothing
in these cases in conflict with the views for which we contend.
In *Yonley* v. *Lavender,* it was held that no execution could
issue on a judgment against an administrator, and that it was
to be paid in due course of administration, but, it was also
said: ''The recovery of judgment gave no prior lien on the
property, but simply fixed the status of the party and *com-
pelled the administrator to recognize it in the payment of
debts.*'' And in *Byers* v. *McAuley,* it is said: ''A citizen
of another state may establish a debt against the estate.''
(Citing *Yonley* v. *Lavender.*) It is impossible to reconcile
these decisions of the supreme court of the United States with
the theory that a judgment of a federal court merely estab-

[60 Mont. 276.]

lishes a *prima facie* case in favor of the claimant. See, also, *Sharon* v. *Terry*, 36 Fed. 337, 13 Sawy. 387, 1 L. R. A. 572, the decision in which case is referred to as authority in *Julian* v. *Central Trust Co.*, 193 U. S. 93, 48 L. Ed. 629, 24 Sup. Ct. Rep. 399.

MR. JUSTICE GALEN delivered the opinion of the court.

It appears that in the year 1878, John M. Smith and W. A. Smith, brothers, the latter being the younger, started in the ranch and sheep business in Meagher county. For about ten years thereafter they did most of their own work, kept no books, had no settlements, and owned a joint bank account, upon which each drew as funds were needed. W. A. Smith married in 1884, had three children, one boy, William Smith, the respondent herein, and two girls, Anna Maud and Nellie May, all of whom were born on the ranch in Meagher county, where the family resided until they moved to Castle, Meagher county, from which latter place Mrs. Smith deserted her husband during the latter's absence, taking the two girls with her and leaving the boy in a neighbor's care. In the fall of 1891, W. A. Smith took the boy to his sister, Mrs. Reynolds, living in Fayette, Ohio, and gave him into her care and keeping to rear. In the year 1893, having gotten possession of his two daughters, he also placed them with Mrs. Reynolds for similar purpose, and all three children grew up in her family and were with her in Ohio at the time of their father's death at White Sulpher Springs, Montana, on February 13, 1897.

Smith Bros. Sheep Company was formed in 1890 to take over the property and conduct the business of the two brothers. It was capitalized for 250,000 shares of the par value of $1 per share. Of the capital stock, 5,000 shares were issued to the wives of each of the brothers, for joining in the deeds; 100 shares were issued to J. A. McNutt, a brother-in-law, who was their bookkeeper from 1888 to 1901, and the balance of the stock was divided equally between the Smith brothers, 119,950 shares to each. John M. Smith's wife retained her

stock; and the wife of W. A. Smith disposed of all of hers, W. A. Smith finally getting 3,000 shares of it and John M. Smith 2,000 shares. During W. A. Smith's life he was vice-president of the company, being succeeded after his death by N. B. Smith, his nephew, who then held fifty shares of stock in the company. John M. Smith was president of the company from the time it was organized until his death.

N. B. Smith was designated and duly qualified as executor of the last will and testament of W. A. Smith. John M. Smith married in 1887, and died October 6, 1908, at Battle Creek, Michigan, being still a resident of Meagher county, Montana, and leaving estate therein. He designated as executrix of his will his widow, Mary Smith, who was appointed and qualified. She and his son, J. Stanley Smith, were the chief and residuary beneficiaries under the will.

John M. Smith was sixty-three years of age at the time of his brother's death, and both himself and wife were then in poor health, his wife being absent in California, where he wished to go to live. McNutt conceived the idea of selling the property, and, after discussing the matter, suggested the idea of taking the subject up with N. B. Smith, the executor of the estate of W. A. Smith, deceased. Thereafter, on January 24, 1898, the district court of Meagher county authorized a private sale of that portion of the stock of the Smith Bros. Sheep Company belonging to the estate of W. A. Smith, deceased, for not less than $75,000, it being the joint idea of the executor and of John M. Smith that the stock belonging to the estate of W. A. Smith would bring more if it were sold in conjunction with that of John M. Smith; ownership and control of the property in the one person appearing more desirable. So, in contemplation of making such sale, in June, 1898, McNutt was given an option on the whole property at the price of $190,000. Several attempts to make sale of the property to others failed, and finally the executor, N. B. Smith, offered the interest of the estate to John M. Smith for $85,000 cash, which, after considerable correspondence and

[60 Mont. 276.]
negotiations, resulted in the sale by the executor, confirmed by the court March 25, 1899, of the stock belonging to the estate to John M. Smith for the sum of $85,000. Thereafter, on June 12, 1899, a decree of final settlement and distribution being entered in the estate of W. A. Smith, deceased, and John M. Smith having qualified as guardian for the three minor children of W. A. Smith, on May 25, 1899, on June 14, 1899, the executor paid over to the guardian the amount remaining in his hands belonging to the estate, amounting to the sum of $82,174. The guardian used $82,000 of this amount in June, 1899, in liquidation of his indebtedness to the Union Bank & Trust Company, Helena, Montana, incurred in the consummation of the purchase of the property from the executor, notes for which, given to the bank, aggregated $85,000, and bore interest at the rate of nine per cent per annum. On December 11, 1900, long after such use of the funds in liquidation of his indebtedness, the guardian procured an order from the district court of Meagher county, authorizing him to borrow from himself as guardian the sum of $82,000 at the rate of three per cent per annum. Subsequently, in presenting his accounts in the matter of the guardianship, he charged himself only with interest on the balance due from time to time on such loan at the rate of three per cent per annum from the date of the court's order permitting him to borrow the money. The respondent having reached his majority by October, 1906, the estate and guardianship was finally closed and distribution made and the guardian discharged December 27, 1906.

In August, 1907, the respondent having learned from his sister that his guardian had not made full account and settlement with him, brought a suit in equity in Meagher county, Montana, wherein he alleged that the purchase of the stock by his guardian in the Smith Bros. Sheep Company was fraudulent, and sought to have the sale set aside to the extent of 40,983⅓ shares, his alleged interest therein as beneficiary under the will of his father. This action resulted adversely

[60 Mont. 276.]

to the respondent, and an appeal was taken to the supreme court of this state. On such appeal the supreme court affirmed the lower court (*Smith* v. *Smith,* 45 Mont. 535, 125 Pac. 987), holding that there was not such evidence of fraudulent transactions between the guardian and the executor as to warrant the court in setting aside the sale. Previously thereto, a contrary opinion on substantially the same facts was reached by the United States circuit court of appeals, ninth circuit, in the case of *Moore* v. *Smith,* 182 Fed. 540, 105 C. C. A. 78. In the federal court, the action was decided in the first instance adversely to the contentions of Nellie May Moore, but on appeal to the circuit court of appeals her contentions were upheld, as above indicated. Her action was instituted in the federal court because of diversity of citizenship.

Some time subsequent to the affirmance by the supreme court of this state of the judgment against the respondent in his suit, the respondent established a residence in the state of [1] California, and thereafter, on the fourteenth day of March, 1913, he exhibited and presented his claim and demand to the executrix of the estate of John M. Smith, deceased, in the sum of $17,015.23, being the amount alleged due and owing unto him for interest unpaid upon funds used and the difference between the rate actually paid by the guardian for the use of the money, *i. e.,* three per cent, and that which should have been paid, *i. e.,* eight per cent, compounded annually, from June 14, 1899, to June 14, 1908, the date of the guardian's final account, and simple interest thereon at eight per cent thereafter.

Within two months from this time, he brought suit upon such claim against the executrix in the district court of the United States for the district of Montana, which resulted in a decree in his favor for the total amount alleged to be due (*Smith* v. *Smith* (D. C.), 210 Fed. 947) and upon appeal to the circuit court of appeals this judgment was affirmed (*Smith* v. *Smith,* 224 Fed. 1, 139 C. C. A. 465). Thereafter, based upon such judgment of the federal court, the respondent made

demand upon the executrix for the payment of his claim, amounting to the sum of $24,844.99, together with interest at eight per cent per annum from February 10, 1914, the date of entry of decree by the federal court in respondent's favor; and in making and submitting her final account and petition for discharge, dated October 15, 1915, and filed in December, 1915, the executrix reported to the district court the facts respecting this claim, and that it remained unpaid. In the prayer of such petition, she asked that the claims unpaid and outstanding, together with interest thereon, be directed to be paid from funds belonging to the estate.

Thereafter, in December, 1915, J. Stanley Smith, son and beneficiary of John M. Smith, deceased, duly filed objections and exceptions to the final account and petition for distribution as respects the claim and demand of the respondent, William Smith. The grounds of the objections and exceptions being that the claim was not presented to the executrix of the estate of John M. Smith within ten months after the date of the first publication of the notice to creditors of the estate; that at the time the claim was presented to the executrix it was barred by the provisions of section 6449, subdivision 4, and section 6451, of the Revised Codes; that the claim has been adjudicated by the supreme court of Montana adversely to its validity, and that the claim was and is not a proper claim against the estate of John M. Smith, deceased. The respondent then secured a removal of the matter to the United States district court for the district of Montana, and after hearing in that court the proceeding was remanded to the state district court, as not involving a federal question.

An answer was then filed by the respondent herein and because of the death of J. Stanley Smith, the contestant, his widow and executrix, Gertrude Mayn Smith, was at the hearing substituted in his place. Evidence was introduced and heard upon the contest, and thereafter judgment and order was made and entered allowing and approving the final account of the executrix of the estate of John M. Smith, deceased, and

60 Mont.—19

overruling and dismissing the contest of J. Stanley Smith, the appellant's testator, against respondent's claim, and payment thereof was directed. This appeal is from the order and judgment.

Five specifications of error are assigned by the appellant, all of which may be resolved into one question, namely: Did the court err in approving and allowing the claim of William Smith and ordering and directing the executrix of the estate of John M. Smith to pay the same?

Although several questions are raised and elaborately argued on this appeal, they have been foreclosed in respondent's favor by judgment and decision of the federal court. (*Smith* v. *Smith,* 210 Fed. (D. C.) 947; *Id.,* 224 Fed. 1, 139 C. C. A. 465)—for example, such matters as the bar of the statute of limitations, respondent's laches and noncompliance with the statute of nonclaim.

In our view of the case, the primary question before us for determination is the effect to be given to the judgment of the federal court in favor of respondent's claim. No conflict of judicial determination is here presented as between the state and federal court, for, as noted, the action brought by respondent in the state court was to set aside the executor's sale and recover specific property on grounds of fraud, while the federal judgment relied upon by the respondent and constituting the basis of his claim is misappropriation of the wards' money derived from the sale, and interest for the use thereof by the guardian. It is true that the federal and state courts came to diametrically opposite conclusions on the same state of facts, though the parties were not the same, on the question of the right of the ward to avoid the executor's sale and recover his proportion of the capital stock in the corporation. (See *Moore* v. *Smith,* 182 Fed. 540, 105 C. C. A. 78, and *Smith* v. *Smith,* 45 Mont. 535, 125 Pac. 987.) However, the judgment in each instance is separate and distinct, and involves no conflict of authority or of jurisdiction. The first case involved the application and construction of the state

[60 Mont. 276.]
laws by the federal court, as applied to a nonresident of the
state of Montana, entirely within its jurisdiction; while the
latter case involved like application of the laws of the state
of Montana in a case presented by one of its citizens, entirely
within its separate jurisdiction.  Nellie (Smith) Moore brought
her action in the federal court because of diversity of citizen-
ship, as she had a right to do, and the respondent, being then
a resident of the state of Montana, brought a similar action in
the state court; he at that time not being in position to litigate
the questions raised in the federal court.  Both the federal
and the state court in each of these cases was clothed with
complete independent jurisdiction, and the contrary conclu-
sions reached did not constitute an encroachment by either
upon the absolute rights, province or jurisdiction of the other.
The federal court did not assume to sit in review of the state
court's judgment, nor to set aside the decree of the latter, and
the state court considered and referred to the federal court's
decision with "greatest respect."  The judgment of each is
entirely independent of the other within its own sphere and
jurisdiction, and the judgments of the one will be recognized
by the other in application of the doctrine of *res adjudicata.*

No higher sanctity or effect can be claimed for the judg-
ment of the circuit court of the United States than is due
to the judgment of the state courts rendered in a like case,
under similar circumstances.  (*Dupasseur* v. *Rochereau,* 21
Wall. 135, 22 L. Ed. 588; see, also, *Embry* v. *Palmer,* 107
U. S. 3, 27 L. Ed. 346, 2 Sup. Ct. Rep. 25; *Pittsburgh Ry.*
v. *Loan & Trust Co.,* 172 U. S. 510, 43 L. Ed. 528, 19 Sup.
Ct. Rep. 238; *Crescent City Co.* v. *Butchers' Union Co.,* 120
U. S. 141, 30 L. Ed. 614, 7 Sup. Ct. Rep. 472; *Hancock Nat.
Bank* v. *Farnum,* 176 U. S. 640, 44 L. Ed. 619, 20 Sup. Ct.
Rep. 506.)

The United States court is possessed with jurisdiction to ad-
minister the laws of the state where jurisdiction is dependent
upon diversity of citizenship.  Its judgment is therefore en-
titled in the courts of another state to the same faith and

credit which would attach to a judgment of a court of the state. (*Bigelow* v. *Old Dominion Copper Co.,* 225 U. S. 111, Ann. Cas. 1913E, 875, 56 L. Ed. 1009, 32 Sup. Ct. Rep. 641.) The only effect that can be claimed for the judgment of the circuit court of the United States is such as would belong to the judgments of the state courts, rendered under similar cir-

[2] cumstances; but, where the state court refuses to give effect to the judgment of the federal court upon the point in dispute and within its jurisdiction, a federal question arises under the laws of the United States establishing the circuit court and vesting it with jurisdiction. (*Pittsburgh Ry.* v. *Loan & Trust Co.,* 172 U. S. 493, 43 L. Ed. 528, 19 Sup. Ct. Rep. 238.)

Federal court judgments and decrees, made and entered in a particular state, are given such effect only as is required with respect to the judgment and decrees of a state tribunal of equal authority under like circumstances. (*Pittsburgh Ry.* v. *Loan & Trust Co., supra;* 15 R. C. L., sec. 364.)

"The rule on this subject by the supreme court of the United States is as follows: The judgment and decrees of the federal courts, sitting in a particular state, are to be accorded in the courts of that state, whether by plea or in proof, such effect and such effect only as would be accorded in similar circumstances to the judgments and decrees of a state tribunal of equal authority; and whether such due effect has been given by a state court to a judgment or decree of a federal court is a federal question, within the jurisdiction of the supreme court of the United States on a writ of error to the court of highest authority of the state. (*Crescent City Livestock Landing & Slaughter-house Co.* v. *Butchers' Union Slaughter-house & Livestock Landing Co.,* 120 U. S. 141, 30 L. Ed. 614, 7 Sup. Ct. Rep. 472; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Long Island Loan & Trust Co.,* 172 U. S. 493, 43 L. Ed. 528, 19 Sup. Ct. Rep. 238; *Hancock Nat. Bank* v. *Farnum,* 176 U. S. 640, 44 L. Ed. 619, 20 Sup. Ct. Rep. 506." 2 Black on Judgments, sec. 938.)

[60 Mont. 276.]

The case of *Cromwell* v. *County of Sac*, 94 U. S. 351, 24
L. Ed. 197, defining the common-law rule, is a leading case on
the question of *res adjudicata,* and has been cited and followed
in hundreds of cases, as shown by the extra annotations to the
Lawyers' Edition of the Supreme Court Reports. In that case,
Mr. Justice Field said: "In considering the question of this
judgment, it should be borne in mind, as stated by counsel,
that there is a difference between the effect of a judgment as
a bar or estoppel against the prosecution of a *second action*
upon the *same claim* or *demand* and its effect as estoppel in
*another action* between the same parties upon a *different
claim* or *cause of action.* In the former case, the judgment,
if rendered upon the merits, constitutes an absolute bar to a
subsequent action. It is a finality as to the claim or demand
in controversy, concluding parties and those in *privity* with
them, not only as to every matter which was offered and re-
ceived to sustain or defeat the claim or demand, but as to any
other admissible matter which might have been offered for that
purpose. Thus, for example, a judgment rendered upon a
promissory note is conclusive as to the validity of the instru-
ment and the amount due upon it, although it be subsequently
alleged that perfect defenses actually existed, of which no
proof was offered, such as forgery, want of consideration, or
payment. If such defenses were not presented in the action,
and established by competent evidence, the subsequent allega-
tion of their existence is of no legal consequence. The judg-
ment is as conclusive, so far as future proceedings at law are
concerned, as though the defenses never existed. The lan-
guage, therefore, which is so often used, that a judgment
estops not only every ground of recovery or defense actually
presented in the action, but also as to every ground which
might have been presented, is strictly accurate, when applied
to the demand or claim in controversy. Such demand or claim,
having passed into judgment, cannot again be brought into
litigation between the parties in proceedings at law upon any
ground whatever. But where the second action between the

[60 Mont. 276.]

same parties is upon a *different claim or demand,* the judg-
ment in the prior action operates as an estoppel only as to
those matters in issue or points controverted, upon the de-
termination of which the finding or verdict was rendered. In
all cases, therefore, where it is sought to apply the estoppel
of a judgment rendered upon one cause of action to matters
arising in a suit upon a *different cause of action,* the inquiry
must always be as to the point or question actually litigated
and determined in the original action, not what might have
been thus litigated and determined. Only upon such matters
is the judgment conclusive in another action.'' (See, also,
*Dowell* v. *Applegate,* 152 U. S. 327, 38 L. Ed. 453, 14 Sup. Ct.
Rep. 611.)

     The judgment before the lower court on final report and
[3] account of the executrix, as regards which payment was
contested by appellant's testator, was one of the federal court,
predicated upon alleged rights not adjudicated by the state
court. In fact, the subject was expressly reserved from deci-
sion, as Mr. Justice Smith, speaking for this court, said:
''It may be that upon settlement of the guardian's accounts
he should have been required to pay a greater rate of interest
and for a longer period of time than was actually required of
him, but that question is not before us; and, even if it should
be answered in the affirmative, the fact cannot by relation
characterize as fraudulent and void prior transactions which
were in themselves honest and free from actual fraud.'' As
noted from the language of that decision, the matter of inter-
est was not before the court, and the subject was not adjudi-
cated until decision of the federal court presented for our con-
sideration on this appeal. (*Smith* v. *Smith* (D. C.), 210 Fed.
974; *Id.,* 224 Fed. 1, 139 C. C. A. 465.) The suit was not
based on the same cause of action as that before the state
court in *Smith* v. *Smith.* It is a wholly different cause of
action. In discussing the subject, Judge Gilbert, speaking for
the circuit court of appeals, in *Smith* v. *Smith,* 224 Fed. 1,
139 C. C. A. 465, said: ''We find no merit in the plea *res*

*judicata.* The suit in the state court of Montana was brought solely to recover specific property and the profits accruing thereon. The judgment of the supreme court establishing the validity of the sale determined all the issues in that suit." And Judge Bourquin, in deciding favorably on the claim of the respondent in the district court of the United States for Montana (210 Fed. 947), said: "The plea of *res judicata* is not well founded. The former suit had no double aspect, and was based solely on rescission of a sale and to recover the specific property and accrued profits. It terminated by a judgment establishing the validity of the sale denying the right to rescind. The instant suit is based on misappropriation by the guardian of money received from said sale, and to recover interest as damages because thereof. Surely this suffices to demonstrate *res judicata* does not apply. * * * The cause of action herein was not in issue, nor determined nor open to determination in the former suit" (referring to the case of *Smith* v. *Smith,* 45 Mont. 535, 125 Pac. 987).

The questions of the application of the statute of limitation, respondent's laches, and the statute of nonclaim were all presented in defense in the federal courts, and were decided adversely to appellant's contentions herein, both by the United States district court for Montana as well as the circuit court of appeals. But question arises as to whether the contestant is in such relation of privity to the executrix, Mary Smith, as to apply the doctrine of *res adjudicata* to him.

By the provisions of section 7648, Revised Codes: "All matters, including allowed claims not passed upon on the settlement of any former account, or on rendering an exhibit, or on making an order of sale, may be contested by the heirs for cause shown," *etc.*

The contest in the instant case was made by J. Stanley Smith as an heir under and by virtue of the provisions of the section just quoted, but this section does not authorize or warrant a contest of a judgment so as to permit the district court, sitting in probate, to again make inquiry into the defenses

made and considered on the trial of the case leading up to judgment. The judgment itself is conclusive upon the district court as establishing the claim, and inquiry may not be made by it collaterally by way of review to determine whether or not the judgment of a court of competent jurisdiction was proper in view of the defenses made before it.

"A judgment rendered against an executor or administrator, upon any claim for money against the estate of his testator or intestate, only establishes the claim in the same manner as if it had been allowed by the executor or administrator and a judge; and the judgment must be that the executor or administrator pay, in due course of administration, the amount ascertained to be due. A certified transcript of the docket of the judgment must be filed among the papers of the estate in court. No execution must issue upon such judgment, nor shall it create any lien upon the property of the estate, or give to the judgment creditor any priority of payment." (Section 7536, Rev. Codes.) It merely establishes the claim to be paid in due course of the administration of the estate. (*Gauss* v. *Trump*, 48 Mont. 92, 135 Pac. 910.)

"A judgment is the final determination of the rights of the parties in an action or proceeding." (Sec. 6710, Rev. Codes.)

Section 7914 Revised Codes, reads as follows: "The effect of a judgment or a final order in an action or special proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows:

"1. In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent; or in respect to the personal, political or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person.

"2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the par-

ties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity; provided, they have notice, actual or constructive, of the pendency of the action or proceeding.''

Section 7917 provides: ''That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto.''

The sections quoted are merely declaratory of the common-law rule relating to the effect of former judgments, as first announced in the *Duchess of Kingston's Case.*

Section 7502 reads in part as follows: ''The executor or administrator is entitled to the possession of all the real or personal estate of the decedent, and to receive the rents and profits of the real estate *until the estate is settled, or until delivered over by order of the court or judge to the heirs or devisees,''* etc.

''Under our system, the whole of the estate, both real and personal, goes into the possession of the executor or administrator, first for the payment of debts, and then for distribution under the will or the laws of succession.'' (*In re Tuohy's Estate,* 33 Mont. 230, 83 Pac. 486; see, also, *In re Higgins' Estate,* 15 Mont. 474, 28 L. R. A. 116, 39 Pac. 506.)

The executor or administrator is not only the personal representative of the decedent, but is also to a very great extent the representative of the creditors and of the heirs or legatees (18 Cyc. 206), and the executor or administrator is legally possessed for the time being of the personal property of which the decedent died possessed, and his authority extends so completely to all property as to exclude for the time being creditors, legatees and all others unofficially interested in the estate. They cannot follow such property specifically into the hands of others; but the executor or administrator is the only true representative thereof whom the law will regard. (18 Cyc. 206.) A bond is required of the executrix (sec.

7452) conditioned that she will faithfully execute the duties of the trust according to law (section 7454), and a judgment against the executrix in a probate proceeding, determining the amount of her indebtedness to the estate, is conclusive against the sureties, and cannot be inquired into collaterally. (*Botkin* v. *Kleinschmidt*, 21 Mont. 1, 69 Am. St. Rep. 641, 52 Pac. 563; *Kenck* v. *Parchen*, 22 Mont. 519, 74 Am. St. Rep. 625, 57 Pac. 94.)

Section 7530 reads: "When a claim is rejected either by the executor or administrator, or the judge, the holder must bring suit in the proper court against the executor or administrator within three months after the date of its rejection, if it be then due, or within two months after it becomes due, otherwise the claim shall be forever barred."

When the respondent's claim was rejected by the executrix, he sued her, as he was by this statute required to do. The statutory directions as to who shall be sued by the claimant specifically directs the suit to be brought "against the executor or administrator," and says nothing concerning the heirs, devisees, or legatees. The reason is self-apparent, *viz.*, the executor or administrator stands in a representative capacity of all interested in the estate. A cause of action is held to be decided between the same parties, not only when the same persons have appeared as parties themselves, but also when they have appeared by executors or administrators. (Herman on Estoppel and Res Judicata, sec. 164.)

Section 4787 provides as follows: "Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."

The property of a decedent without distinction is chargeable with the payment of his debts (secs. 4799 and 4800, Rev. Codes), and the heirs, devisees and legatees are not entitled to the actual possession of the property of the estate, either real or personal, until it has been administered upon in accordance with the law. The judgment of the federal court in the case before us constitutes an allowed claim against the

[60 Mont. 276.]

estate, and while a devisee or legatee may contest the allowance of the same, it will be ordered paid by the probate court like other approved claims against the estate, where the claim appears to have been adjudicated by a court having jurisdiction of the parties and subject matter of the action. Theoretically the legatee secures title to the personal property upon the death of the testator, but the property does not actually pass into the possession of the legatee until after all of the debts against the estate have been fully liquidated, so that upon final settlement and distribution of the property the assets in the hands of the executrix may be considerably reduced under the amount of the legacy at the time of the death of the testator. Judgment rendered by a court of competent jurisdiction against the executrix, standing in a representative capacity of the deceased, before final settlement and distribution of the estate, binds the heirs, devisees and legatees as privies thereto. The judgment being against the estate necessarily affects their rights.

The judgment of the federal court allowing and adjudi-
[4]     cating the claim of the respondent is in truth and in fact one *in rem* rather than *in personam*. It is not against the executrix in her personal capacity or as a legatee, heir or otherwise; but rather against her in her representative capacity. In fact, it is a judgment against the estate, and all persons interested in the estate, whether they be heirs, legatees or creditors, are foreclosed by such a judgment on the merits of the claim.

"Privies are those who are so connected with the parties
[5]     in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation, as lessor and lessee, heir and ancestor, executor and testator." (See *Brown* v. *Chaney*, 1 Kelly (Ga.), 412, 2 Black on Judgments, 2d ed., sec. 534.)

In *Dunseth* v. *Butte Elec. Ry. Co.*, 41 Mont. 14, 21 Ann. Cas. 1258, 108 Pac. 567, the syllabus reads: "A litigant has no right, as against the same adversary, to have a question,

either of law or fact, relating to the same cause of action; twice adjudicated in the same or another court of like jurisdiction, unless a re-examination of the question has been regularly ordered.'' And in the course of the opinion, it is said: ''If it be true, as apparently indicated by the pleadings in this case, that the cause came on for trial in the district court of Silver Bow county upon exactly the same state of the pleadings as had previously been presented to the federal court, then, whatever technical question of pleading may have been decided by the latter court became a thing adjudicated, so far as the state court was concerned, and, as the point decided disposed of the entire case, then the entire case became *res judicata* upon that state of the pleadings. If the plaintiff was dissatisfied with the ruling of the federal court, it was her privilege to appeal. She had not· the right, however, to make the same record in the state court and ask that court, in effect, to reverse the ruling of the federal court. A litigant has no right, as against the same adversary, to have a question, either of law or ·fact, relating to the same cause of action, twice adjudicated, in the same court or another court of like jurisdiction, unless a re-examination of the question has been regularly ordered. (See *Kleinschmidt* v. *Binzel,* 14 Mont. 31, 43 Am. St. Rep. 604, 35 Pac. 460; *Agnew* v. *McElroy,* 10 Smedes & M. (Miss.) 552, 48 Am. Dec. 772.) And an erroneous ruling is just as conclusive as the correct one, if allowed to become final.''

In 2 Black on Judgments, second edition, section 503, it is said: ''This great principle of the conclusiveness of judgments is fairly imbedded in the jurisprudence of England. Though recognized with more or less distinctness from very early times, it was never so satisfactorily stated as in the great case of the Duchess of Kingston, where Chief Justice De Grey declared the rule to be that 'the judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive, between the same parties, upon the same matter directly in question in another

court.' This language, from being constantly quoted with approbation, has acquired almost the force of a statute. Another early and leading case upon the general subject is one decided by Lord Ellingborough, wherein he said: 'It is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, that creates the estoppel.' "

The general principle announced in numerous cases is that a [6] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question or fact, once so determined, must, as between the same parties or their privies, be taken as conclusively established so long as the judgment in the first suit remains unmodified. (*Southern Pac. R. Co.* v. *United States,* 168 U. S. 1, 42 L. Ed. 355, 18 Sup. Ct. Rep. 18.)

The judgments of appellate courts are as conclusive as those [7] of any other courts. They not only establish facts, but also settle the law so that the law as decided upon any appeal must be applied in all the subsequent stages of the cause. (1 Freeman on Judgments, 4th ed., sec. 249.) The judgment [8] or decree of a federal court when rendered is binding and perfect between the parties until reversed, without regard to any adverse opinion or judgment of any other court of merely concurrent jurisdiction. Its integrity, its validity, and its effect are complete in all respects between all parties in every suit and in every forum where it is legitimately produced as the foundation of an action or of a defense either by plea or in proof as it would be in any other circumstances. (*Crescent City Livestock Co.* v. *Butchers' Union,* 120 U. S. 141, 30 L. Ed. 614, 7 Sup. Ct. Rep. 472.)

In our view the judgment rendered by the federal court forecloses further discussion with reference to the subject. There is no warrant or authority or reason for permitting these questions to thus be further contested in the district

court, sitting in probate, in this contest, as it would amount to a rehearing on issues which have already been determined by the federal court. The judgment established the respondent's claim, and the district court, sitting in probate, upon hearing of the contest, was in error in receiving proof and making findings with respect to the merits of the judgment.

The order and judgment appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS and HOLLOWAY concur.

MR. JUSTICE COOPER, deeming himself disqualified, takes no part in this decision.