**FERGUSON et al. v. WACHS et al.**
(two cases).
Nos. 6343, 6344.

Circuit Court of Appeals, Seventh Circuit.
May 12, 1938.

George B. McKibbin, Walter E. Beebe, and Dwight S. Bobb, all of Chicago, Ill. (Hamilton K. Beebe and Fred L. Wham, Jr., both of Chicago, Ill., of counsel), for appellees.

David K. Cochrane, Edgar L. George, Frederick A. Brown, and G. Gale Roberson, all of Chicago, Ill., for appellants.

Before EVANS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

These causes were consolidated for trial by order of the District Court, and by order of this court the separate appeals have been consolidated for briefing and hearing in this court.

The complaint in each case is brought to recover one-half of the sale price of certain shares of the capital stock of the Ferguson Coal Company, a corporation, claimed by the plaintiffs as residuary leg-atees under the last will and testament of Lawrence W. Ferguson, deceased. The trial court found that the plaintiffs were entitled to recover and entered a decree in the case of Elinor Ferguson for $53,625.59, and in the case of Clarence E. Ferguson for $51,546.44.

Lawrence W. Ferguson died June 1, 1931, leaving a last will and testament dated December 23, 1927, which was admitted to probate in the probate court of Cook county, Ill., June 12, 1931; and letters testamentary were issued to the First Union Trust & Savings Bank (afterwards consolidated and merged with the First National Bank of Chicago) and Claire Ferguson as coexecutors, and said estate is still pending.

Claire Ferguson, one of the executors and the widow of Lawrence W. Ferguson, died March 23, 1936, leaving a last will and testament which was admitted to probate in the probate court of Cook county, Ill., on April 13, 1936; and letters testamentary were issued thereon to the defendants herein, Edward H. Wachs and Harry Lampert.

On January 18, 1932, Clarence Ferguson, as contingent beneficiary under the will of Lawrence Ferguson, filed a petition in the probate court of Cook county, Ill., in the matter of the estate of Lawrence Ferguson, deceased, denominated "Petition for Citation to Discover Assets," in which he alleged that there were 304 shares of stock in the Ferguson Coal Company which belonged to the estate (but which had not been brought into the estate), and that Claire Ferguson claimed the same as her property. Claire Ferguson answered denying she had any assets belonging to the estate. On April 28, 1932, the probate court entered a finding and judgment that the estate had no right or interest in the 304 shares. An appeal was prayed from this order and taken to the Cook county circuit court but later was dismissed. Inheritance tax proceedings were taken in the estate also, and there was a determination that the shares were not taxable on the ground that they had been transferred by decedent to his wife and were not a part of the estate. Thereafter on January 9, 1933, Clarence Ferguson executed a release of all claims he might have in respect to the 304 shares.

The will of Lawrence Ferguson created a trust which was to terminate at the death of his wife, Claire Ferguson; and

upon her death the property in the trust was to pass to his sister, Eva Ferguson, or to her surviving issue. In case of the death of Eva Ferguson without surviving issue, the trust property was to pass to the plaintiffs, Clarence Ferguson and Elinor Ferguson. Eva Ferguson died without issue in 1933, and before the death of Claire Ferguson which occurred in March, 1936.

Thereafter on September 18, 1936, the two suits involved in these appeals were filed in the United States District Court, one by Elinor Ferguson and one by Clarence Ferguson. The defendants in each case were the executors of Claire Ferguson's estate, and the coexecutors of Lawrence Ferguson's estate. Each complaint alleged diversity of citizenship and jurisdictional amounts; that Lawrence Ferguson was the holder of 304 shares in the Ferguson Coal Company prior to his death, the total issue of shares being 500; that about three weeks before his death he caused a new certificate for 304 shares to be prepared in the name of Claire Ferguson and caused same to be dated back to December 23, 1930; that this new certificate was indorsed in blank by Claire Ferguson but was never delivered to her and remained in possession of Lawrence Ferguson until his death, and that the purpose of such action was to prevent execution of a judgment in a case then pending against Lawrence Ferguson; that after Lawrence Ferguson's death Claire Ferguson illegally possessed herself of the stock and sold and converted it to her own use and retained the proceeds until her own death; that Claire Ferguson acted in such a way by herself and by conspiracy with her "advisers" that the true facts had been concealed from plaintiffs. Elinor Ferguson alleged the additional facts that when Lawrence Ferguson died she was an infant of 14 years; that under the will her interest did not vest until Claire Ferguson's death in 1936; that she had no knowledge of the actual facts relating to the stock of the Ferguson Coal Company and of Claire Ferguson's appropriation until 1936 when her attorney made the discovery. Clarence Ferguson alleged that he was ill in California at the time of the death of Lawrence Ferguson and caused to be filed in the probate court of Cook county the petition for discovery of assets, and that on hearing thereon Claire Ferguson caused certain false evidence to be given (setting out same); that certain persons having knowledge of the facts were not called and that one witness did not state all the facts because of duress; that as a result of these circumstances the probate court found as it did; and that as a result of these same circumstances and without knowing that the facts were other than as developed at the hearing he (Clarence) executed the release before mentioned; that until 1936 he had no knowledge of the true facts or that false evidence had been given; that on coming to Illinois in 1936 he discovered that Claire Ferguson had actively concealed the facts. Both plaintiffs asked for an accounting from the estate of Claire Ferguson, and Clarence Ferguson also asked for the setting aside of the release which he gave, upon his repayment of the consideration he received therefor.

Defendants moved to dismiss Elinor Ferguson's action on the ground, among others, that Lawrence Ferguson's estate was still pending and that the funds involved here are solely within the jurisdiction of the probate court. Also that the Illinois statute gives the probate court jurisdiction and outlines the procedure for determining adverse claims to property, and provides that such claims are triable by jury; that as to Clarence Ferguson's action, the probate court's finding is a final adjudication of the matter; that his release is a bar, and that he is guilty of laches in waiting four and one-half years after the probate court decree. All motions were overruled. Defendants answered Elinor Ferguson's complaint denying most of the material allegations and setting up the adjudication of the probate court. They allege that the executors of Lawrence Ferguson's estate initiated an inheritance tax proceeding and that an issue was formed in such a proceeding as to the ownership of the stock; that Elinor Ferguson was made a party thereto and a guardian ad litem was appointed for her; that evidence was taken and it was concluded by the court that Claire Ferguson was the owner, and that the same is res judicata as to her. The answer to Clarence Ferguson's complaint is practically the same and includes the probate court's finding, the release, and the inheritance tax proceeding. The coexecutor of Lawrence Ferguson's estate also asks that, in case plaintiffs recover judgments, the money be ordered paid to the estate of

Lawrence Ferguson and not to plaintiffs. Thereafter that part of defendants' answer relating to the inheritance tax was stricken out on motion. But prior to this striking a transcript of the inheritance tax proceedings was introduced in evidence.

Trial of the issues then took place and the District Court entered its findings of facts and of law and its decree. The finding of facts bears out substantially the allegations of the complaint, and the statements of law follow the facts as found by the court.

The trial court concluded that the 304 shares of stock belonged to Lawrence W. Ferguson at the time of his death. The court based its conclusion largely upon the testimony of Helen Wickel, and supporting testimony of other witnesses which tended to prove an intention on the part of Lawrence W. Ferguson to retain the ownership of the stock and yet create a situation which, in the event of a certain contingency, would cause Claire Ferguson to appear to be the owner of the stock. The following statements of facts are included in the court's findings:

"15. That early in May, 1931, upon his return from California, Lawrence W. Ferguson instructed Helen E. Wickel, secretary of the Ferguson Coal Company to make out a certificate of stock in the name of Claire Ferguson for 304 shares of stock and to date the same back to December 23, 1930; that in accordance with such instructions, Helen E. Wickel made out certificate of stock No. 36, in the name of Claire Ferguson, for 304 shares, dated the same December 23, 1930 and delivered the said certificate of stock, together with the stock book, to Lawrence W. Ferguson; that on the same day, said Lawrence W. Ferguson took said certificate of stock No. 36, together with the stock book, with him when he left the office and a day or so later returned to the office the stock book, the stub of which said Claire Ferguson had signed, together with said certificate No. 36, which bore the endorsement in blank of Claire Ferguson; that said certificate No. 36 for 304 shares of stock, together with certificates 22, 30, 31, 32, and 33 for a total of 304 shares of stock which were issued in the name of Lawrence W. Ferguson and not endorsed or canceled, were then enclosed in an envelope and placed by Lawrence W. Ferguson in his personal private box inside the vault of the Ferguson Coal Company and so remained in the possession of Lawrence W. Ferguson until his death.

"16. That Lawrence W. Ferguson feared that as a result of said Daytona Gables Development Company suit, his ownership of stock of the Ferguson Coal Company might be subjected to a judgment which might be entered therein, and because he regarded any possible liability arising therefrom as an unjust claim, caused said certificate No. 36 to be issued, as aforesaid, to enable him to make it appear to outsiders, if he deemed it necessary, that such stock was in the name of Claire Ferguson; that as a result thereof, Lawrence W. Ferguson had in his exclusive possession and control on the day of his death 5 certificates for a total of 304 shares of stock of the corporation in his name, unendorsed and not cancelled, and said certificate No. 36 for 304 shares of stock of the corporation in the name of Claire Ferguson and by her endorsed in blank.

"17. That Lawrence W. Ferguson died on Sunday, May 31, 1931, and several days thereafter, Claire Ferguson came to the office of the Ferguson Coal Company and requested of Helen E. Wickel, secretary of the Ferguson Coal Company, all of the capital stock of the Ferguson Coal Company contained in the private box of Lawrence W. Ferguson in said vault; that in response of said request, said Helen E. Wickel entered the private box of Lawrence W. Ferguson, took therefrom the said 5 certificates of stock standing in the name of Lawrence W. Ferguson, totaling 304 shares, together with said certificate No. 36, and delivered the same to Claire Ferguson."

On the basis of the foregoing the court stated the following conclusion of law: "2. That Lawrence W. Ferguson, on the day of his death, was the owner of 304 shares of the capital stock of the Ferguson Coal Company, and upon his death such stock became the property of his executors to carry out his express intent and purpose, as set forth in his Will; that said Claire Ferguson had neither power nor authority to sell said 304 shares of stock of the said coal company for her own account, but plaintiff, by bringing this suit, has ratified said sale, hence, as residuary legatee of Lawrence W. Ferguson, deceased, is entitled to one-half of 304/500ths of the proceeds of such sale. * * *"

In our opinion there was ample evidence to support the finding of facts upon

which the foregoing conclusion of law was stated.

Helen Wickel was the only living person who had personal knowledge of what occurred at the office of the Ferguson Coal Company in connection with the issuance and the return to that office of certificate No. 36 which represented the 304 shares 'of stock involved in this suit. Assuming that she was intelligent and honest, and the trial court was of the opinion that she was both, she was, as the trial court stated, the key witness, since she was in a position to obtain accurate and first-hand knowledge of the facts to which she testified.

At the time that Lawrence W. Ferguson directed Helen Wickel to make out certificate No. 36 in the name of Claire Ferguson five certificates were outstanding in the name of Lawrence W. Ferguson representing a total of 304 shares of stock; and Miss Wickel testified that she was directed by Ferguson to make out certificate No. 36 for 304 shares in lieu of the five certificates. She testified that Mr. Ferguson took the stock book and certificate No. 36 from the office and later brought back the book and certificate; that the stub in the stock book contained the signed receipt of Claire Ferguson for certificate No. 36, and that certificate No. 36 was indorsed in blank with the name of Claire Ferguson in the handwriting of Claire Ferguson. She also testified that Mr. Ferguson placed certificate No. 36 in an envelope with the five certificates, above referred to, and placed the envelope in his private lockbox in the vault of the Ferguson Coal Company office. She further testified that the envelope remained in the box until after Mr. Ferguson's death; that after his death she inspected the certificates in the envelope; that the five old certificates had not been marked "cancelled," and certificate No. 36 bore the blank indorsement of Claire Ferguson in her own handwriting; and that the stock remained in the lockbox until it was delivered to Claire Ferguson upon her request.

On the basis of the foregoing testimony it was necessary for the trial court to conclude that at the time of his death Lawrence Ferguson was at least the prima facie owner of the 304 shares of stock. He had in his possession all the instruments of title to the 304 shares and any inference of ownership in Claire Ferguson, based upon the issuance of certificate No. 36 in her name, was neutralized by his possession of certificate No. 36 indorsed in blank and of the five unindorsed and uncancelled certificates which were in his name and represented the same shares.

The foregoing facts supplemented by other testimony, justified the conclusion of the trial court that Lawrence Ferguson had no intention of transferring the ownership of the 304 shares to Claire Ferguson, and that the whole transaction was a sham carried out for the purpose of enabling Ferguson to deny ownership of the shares, as against his judgment creditors in the Glen Flora Investment Company Case, Daytona Gables Development Co. v. Glen Flora Investment Co., 345 Ill. 371, 178 N.E. 107, in the event of adverse judgment in that case.

In connection with the foregoing, defendants contend that the trial court erroneously excluded the testimony of Judge Fred Rush, which testimony was in substance that on or about the 23d day of December, 1930, Lawrence Ferguson, in the presence of Judge Rush and Claire Ferguson, asked Rush to "witness his handing his certificates of stock to his wife." And Judge Rush further testified that the certificates were certificates of the Ferguson Coal Company in the amount of 304 shares which "were all indorsed either in blank or to him"; and that Ferguson stated that he was going "to turn them in and issue original certificates to her." In the trial the court heard the testimony of Judge Rush, but ruled that it was inadmissible under the law of Illinois for the reason that the wife of Rush was a legatee under the will of Claire Ferguson. It is immaterial whether the trial court was correct in its ruling since, for the purpose of deciding this case, the court assumed that it was in error and in its memorandum opinion analyzed the testimony of Judge Rush, especially in the light of the testimony of Helen Wickel, and came to the conclusion either that the conversation did not in fact take place, or that the witness was mistaken in his recollection of the time at which it took place; and the trial court further was convinced that the transaction, whatever its date, was a sham for the sole purpose of making evidence in anticipation of the contingency of an ad-

verse judgment in the Glen Flora Investment Company Case. Assuming the truthfulness and accuracy of the testimony of Helen Wickel, the trial court's conclusion as to the trustworthiness of the testimony of Judge Rush was inevitable; and an examination of all the evidence in the record reveals no grounds for this court to question the correctness of the trial court's estimate of the credibility of her testimony. Consequently, we conclude that no injury was done to the defendants' cause by the technical ruling against the competency of Judge Rush's testimony.

There was testimony by witnesses of the plaintiffs for the purpose of showing that Lawrence W. Ferguson, for many years prior to his death, had a definitely formed intention to exclude Claire Ferguson from any actual control of the affairs of the Ferguson Coal Company, and to insure the continuance of the coal company as a business after his death. And in his will he provided for a trust which was to continue during the lifetime of Claire Ferguson for her benefit and for the benefit of his sister, Eva Ferguson; and at the death of Claire Ferguson, the trust property was to go to Eva Ferguson if living or, in case of her death, to her issue; and if she left no issue then to the plaintiffs in this case, Clarence Ferguson and Elinor Ferguson. There was much testimony to the effect that up to a short time before his death Lawrence Ferguson frequently stated that he intended to leave the business as a monument to himself after he was gone; that he was the sole owner of the business, and that his intention was to provide for Claire Ferguson after his death but in such a way that she could not own or control the business of the coal company. There was some testimony to the contrary, but it was the province of the trial court to determine the relative weight and credibility of conflicting testimony.

Assuming that the finding of facts and the conclusions of law stated thereon in the instant case are correct in so far as they affect the question of ownership of the 304 shares at the time of the death of Lawrence W. Ferguson, there remains the question whether the facts and the law applicable thereto justified the trial court's conclusion that the judgment of the probate court of Cook county, Ill., in April, 1932, was not binding upon the plaintiffs in this case for the reason that it was the result of fraud practiced upon said probate court on behalf of Claire Ferguson.

In view of the trial court's finding of facts it must be assumed that Claire Ferguson indorsed certificate No. 36 in blank before the death of Lawrence Ferguson; that she knew that certificates 22, 30, 31, 32, and 33, which represented the same shares of stock as certificate No. 36, had not been marked "cancelled" or "void," until after his death, and also that she knew that certificate No. 36 was made out in her name some time in May, 1931, and dated back to December 23, 1930.

And it is important to note the following facts: Claire Ferguson was, at the time of the trial in the probate court, co-executor with the First National Bank of Chicago of the estate of Lawrence Ferguson and a designated trustee of the trust which was provided for under the will of Lawrence Ferguson, the res of which trust would include the shares in question if they were the property of Lawrence Ferguson at his death. The attorney for the estate and trust had been the attorney of the Ferguson Coal Company and, at times, had acted as legal adviser to Lawrence Ferguson; and after the death of Ferguson he represented Claire Ferguson in personal matters and took an active part in arrangeing for the sale by Claire Ferguson of the 304 shares in question, which sale was consummated a few weeks after the death of Lawrence Ferguson.

In the trial of the instant cause Helen Wickel testified that she had a conversation with Mrs. Ferguson on the day following Mr. Ferguson's death, which conversation was as follows: "She had the will in her hand, and she said, of course, you know now the company belongs to me on account of the transfer of the stock. I am lucky that things happened this way and I am going to sell the company immediately, and I told her that I did not think she could sell the company on account of the condition of the stock that was supposed to go back into the estate. She said, I don't care. I am going to sell it anyway. She told me that if the company had gone into the estate, as provided by the Will, that she would have broken the Will."

Miss Wickel testified that on the day following her conversation with Mrs. Ferguson she telephoned to the attorney for the estate and told him of Mr.

Ferguson's death and called his attention to the condition of the stock, that there were 304 shares in the name of Mr. Ferguson and the same amount in the name of Mrs. Ferguson. The witness testified that the attorney made the following statements: "Well, for the present, just let it ride as it is on account of this lawsuit; keep it quiet." And in answer to the question, "What lawsuit did he refer to" Miss Wickey replied: "The Florida Lawsuit, he said, if that suit is disposed of, we must make a release with the Company, and the shares of stock must go back into the estate." And on cross-examination, in answer to a question respecting the foregoing conversation, Miss Wickel made the following answer: "No, he said, just let the business go along the same way it is until that Florida business is settled and then we must make Mrs. Ferguson understand that this goes back into the estate."

The transcript of evidence contains the following testimony respecting a conversation between Miss Wickel and the attorney for the estate about a week before the hearing in the probate court: "The first time I talked to the attorney for the estate about the title to the stock of the Ferguson Coal Company after that Monday I talked about was about a week before the hearing in the Probate Court, around February, 1932. That was had in the home and he and myself were present. He said 'of course, we don't know what is in anyone's mind. Of course, we think this business should go into the estate,' he said, 'of course, we cannot read anyone's mind, and probably Mr. Ferguson intended it to go to his wife, and not into the estate,' and I reminded him of the fact. I said the stock was not transferred in reality. I only meant to say that it was dated December. He said that didn't make any difference that the stock was really made out on the day that was on the stock, and that was the only date that mattered. I told him I was sure that Mr. Ferguson wanted this business to go into his estate and that the stock was just transferred on account of the suit. That had always been my understanding and I told him what I was sure of." On redirect examination Miss Wickel testified as follows respecting the foregoing conversation: "The attorney said: 'Well, you know a trial is coming up and you know what the condition of the stock was.' He said, 'Of course, we don't have any way of knowing what might be

in another person's mind. We might think that he was making out the other stock or transferring it into his wife's name to avoid any judgment as a result of a lawsuit.' But he said, 'We have no way of telling that. He may have really meant to give this to his wife as a gift.' I said, 'Well, these certificates, you know were actually made in May, although they were dated December of 1930,' He said, 'It does not make any difference when you made them out. The only date that matters is the date on the certificate, December 23, 1930.' That is the only date then that I had in mind in my answers as to the date of the certificate. That is all the conversation that I now recall."

Miss Wickel gave further testimony respecting two conversations with Claire Ferguson just prior to the hearing in the probate court. The record of her testimony is as follows:

"That would be about a couple of weeks before the hearing; sometime in February I think. Just Mrs. Ferguson and myself were present at that conversation. She took me to dinner to some hotel over on the North side near Sheridan Road and also near where she lived. Mrs. Ferguson asked me if I was going to appear at the hearing and I said, 'I expect to be called' and she said, 'Well, when you are asked about the stock, tell them that Mr. Ferguson gave me this stock as a Christmas present.' And I said, 'No I can't do that because he never told me he was going to give it to you as a gift, as a Christmas gift,' and she said, 'I have two witnesses who are going to say that they knew Mr. Ferguson had given me the yard and the stock as a Christmas present.' I told her I was not going to testify to that, because I had never been told that. That is all I recall.

"Q. Did she say anything about having this matter fixed in any way? * * *

"Q. Was there, in fact, anything else said that you recall? I think I asked you that, and you said, no. A. Yes sir, she said, 'Well, the case has all been fixed now by a friend of mine so there won't be anything to it.'

"Q. Did she say anything with reference to you or your personal safety? A. Not that time. About a day or two before the trial she called me up. I was alone in my office. I had a room by myself in the office. She called me on the telephone and again asked me if I was

going to appear. I said, I expect to appear and expected to be called. She said, 'I don't see why you have to go down.' I said, 'Well, if I am subpoenaed I must go.' She said, 'Well, you had better not say anything to hurt me, if you want to live.'"

An examination of the testimony of Miss Wickel in the probate court hearing discloses that she did not state specifically that she made out certificate No. 36 on December 23, 1930; but there is no suggestion that it was made out subsequently to that date. She does testify that Mr. Ferguson took the stock book and certificate No. 36 home with him on December 23, 1930, and that he brought the book back "probably the next day or a few days after." She does not testify that she saw certificate No. 36 after Mr. Ferguson had taken it from the office. She testified that the certificates in lieu of which certificate No. 36 had been issued had been kept by Mr. Ferguson in a private box in a vault of a bank and that he went to the bank and brought these certificates back in an envelope; and that when Mr. Ferguson brought the envelope back certificate No. 36 was in the envelope. But since she also testified that she did not know when Claire Ferguson had indorsed certificate No. 36, whether it was before or after the death of Mr. Ferguson, and did not know when the word "cancelled" was put on the certificates, the necessary inference was that she did not actually see any of the returned certificates prior to the death of Mr. Ferguson. Consequently, the probate court judge was free to draw the inference from Miss Wickel's testimony that certificate No. 36 was in the name of Claire Ferguson at the time of the death of Lawrence Ferguson; that Claire Ferguson had not indorsed it prior to his death; and furthermore the court was free to draw the inference that certificates 22, 30, 31, 32, and 33 had been marked "cancelled" or "void" by Lawrence Ferguson before his death. And it would have been a reasonable inference for the probate court to draw from Miss Wickel's testimony that certificate No. 36 had been issued at the direction of Lawrence Ferguson on December 23, 1930, and that it had been delivered to and accepted by Claire Ferguson and had been placed in the custody of Lawrence Ferguson by her and that Lawrence Ferguson, by marking certificate 22 "void" and by marking 30, 31, 32, and 33 "cancelled," had destroyed all indicia of his ownership of the 304 shares and had left outstanding certificate No. 36 in the name of Claire Ferguson as the sole indicium of ownership of the shares.

From the testimony of Helen Wickel alone the probate court should have concluded that Claire Ferguson was the owner of the 304 shares at the time of the death of her husband. For in the absence of evidence that Claire Ferguson had indorsed the certificate before the death of her husband and in the face of the signed receipt for certificate No. 36, the inference would have been that the other certificates had been marked "cancelled" or "void" by Ferguson in order to consummate the roundabout transfer of his ownership of the 304 shares to his wife.

If in the probate court proceeding Helen Wickel had given the same testimony that she did in the instant case, the probate court would have had before it strong, if not conclusive, evidence that Lawrence Ferguson did not transfer title to the 304 shares to Claire Ferguson; and in addition the probate court would have been confronted with evidence of a fraudulent scheme on the part of Claire Ferguson to keep from the court facts which were material to the decision of the question of ownership.

Defendants urge, however, that if any fraud was perpetrated it was intrinsic fraud, and therefore not available in this suit. They insist that a federal court in equity cannot interfere with the enforcement of an unconscionable judgment of a state court which was obtained by fraud, unless the fraud which led the court into the rendition of the judgment was extrinsic fraud.

It is true that judicial opinions have recognized a distinction between extrinsic and intrinsic fraud in cases in which parties have sought to have a federal court in equity interfere with the enforcement of a judgment of a state court. The line of division between extrinsic and intrinsic fraud is admittedly fine and difficult to locate; but we think that the facts relating to the alleged fraud in the instant case bring it within the judicial definitions of extrinsic fraud.

Assuming the facts to be as they were found by the trial court, Claire Fer-

guson, as coexecutor, and the attorney of the estate of Lawrence Ferguson were under a duty to disclose to the probate court substantially all the facts relating to Claire Ferguson's claim of ownership, which were testified to by Helen Wickel in the instant case.

■ The authorities support the statement that "The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud for which equity may afford relief from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony and this is true whether such fraud be regarded as extrinsic or as an exception to the extrinsic fraud rule." [1] And the foregoing proposition applies with special force when the parties remaining silent owe a special duty to disclose the facts to the very court in which the cause is being heard; and it comes within the general test indicated by the following language in United States v. Throckmorton: [2] "* * these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing."

■ In the instant case Claire Ferguson could not relieve herself of the duty to disclose the facts in question by openly assuming a position adverse to the interest of the estate by claiming ownership of the shares of stock. Furthermore, the testimony of Helen Wickel necessarily carries the inference of active co-operation between the attorney of the estate and Claire Ferguson to prevent Helen Wickel's disclosing the facts which they were under an obligation both to the estate and to the court to disclose. And this result was achieved by the combined effect of coercive threats by Claire Ferguson and the misleading advice by the attorney as to the legal significance of dating back certificate No. 36 from the actual date of its issue in May, 1931, to December 23, 1930. The result was that testimony to the existence of the following material facts was suppressed: (1) That certificate No. 36 was dated back; (2) that Claire Ferguson indorsed in blank certificate No. 36 prior to the death of Lawrence Ferguson; and (3) that the five certificates of stock, in lieu of which certificate No. 36 was issued, had not been canceled or marked "void" by Lawrence W. Ferguson prior to his death.

■ We are of the opinion that the evidence justified the trial court's conclusion that Helen Wickel's failure to testify to material facts in the probate court proceeding was due to the misleading advice given her by the attorney, and by fear and duress caused by the threat of Claire Ferguson, and "that as a result of the concealment of the material and controlling facts the probate court found that said 304 shares of stock were not a part of the estate of Lawrence W. Ferguson, deceased."

■ The facts made a case for equitable relief against the enforcement of the judgment of the probate court.

Defendants urge that plaintiffs' claims were barred by laches, and attention is called to the fact that plaintiffs delayed approximately four years to bring this suit; and defendants insist that plaintiffs failed to exercise reasonable diligence in disclosing facts material to the alleged fraud.

The evidence justifies the conclusion that the plaintiffs were not chargeable with knowledge of the alleged fraud prior to the summer of 1936 when both Clarence E. Ferguson and Elinor Ferguson came to Chicago to collect sums due them under the insurance trust which had been created by Lawrence Ferguson. Clarence Ferguson had been represented at the probate court hearing by a Mr. Nuckolls, an attorney at law practicing at San Francisco, who was assisted at the trial by local counsel, Mr. Harry L. Rickard. Mr. Nuckolls made considerable investigation of the records of the Ferguson Coal Company which records were then in the possession of the successor of that company. He found that certificates Nos. 22, 30, 31, 32, and 33 had been marked "cancelled" but that they had never been indorsed by the original holder, Lawrence W. Ferguson. There was nothing in the company

---

[1] Freeman on Judgments, vol. 3, § 1235, p. 2576. See, also, Smith v. Smith, D.C., 210 F. 947, affirmed in 9 Cir., 224 F. 1.

[2] 98 U.S. 61, at page 66, 25 L.Ed. 93.

records to show when these certificates had been marked "cancelled." At that time certificate No. 36 carried the indorsement of Claire Ferguson to the Excelsior Coal Company, the purchaser of all the stock of the Ferguson Coal Company; and there was nothing to suggest that the certificate had been indorsed in blank by Claire Ferguson prior to the death of her husband. There is no basis for an inference that Mr. Nuckolls did not use diligence in his attempt to obtain information. In the cross-examination of Miss Wickel in the probate court proceeding he attempted to elicit information respecting the time that Claire Ferguson indorsed certificate No. 36 as well as information respecting the time that the other certificates were marked "cancelled." Her answers precluded the inference that she had any information on those subjects. He interviewed a representative of the First National Bank of Chicago, coexecutor, and was informed that the coexecutor had made some investigation and would cooperate with him. But no helpful information was received from that source and the representative of the coexecutor testified in the instant case that he had not talked with Miss Wickel at the time regarding the 304 shares, but that he had discussed the matter with the attorney of the estate and Mrs. Ferguson, "who we considered to be authorities on the subject." In his deposition given for the purpose of the instant trial, Mr. Nuckolls testified that he did everything he could to get the attorney of the estate to assist him but that the attorney of the estate refused to give him any assistance; and that it was Mr. Nuckolls' impression which he gained from what the attorney said and did, that the attorney was seeking to prevent him from getting "any money into the trust estate." Mr. Nuckolls also testified that at the time of the hearing in the probate court he did not have any definite knowledge of the fraud that could have been presented to the court; nor any knowledge of any fraud on which a petition for rehearing could have been based.

■ After the probate court decided that the estate of Lawrence Ferguson had no right, title, or interest in the 304 shares of stock and certain described real estate, Clarence Ferguson perfected an appeal to the circuit court of Cook county, Ill., and later entered into an agreement to dismiss the appeal and executed a full release of any claim with respect to the property involved in the citation proceedings; and in consideration of his release accepted the sum of $2,000. We think the same fraud which vitiated the judgment also destroys the binding character of this release since Clarence Ferguson obviously was still acting in ignorance of the facts which had been concealed from him, as well as from the probate court of Cook county.

■ We are of the opinion that the trial court was correct in holding that Clarence Ferguson was not barred either by laches or by his release. And there was no ground for urging either defense against Elinor Ferguson.

■ Defendants contend that the court erred in striking the amendment to defendants' answer setting forth the inheritance tax proceeding; and urge that the decision of the county judge in such proceeding constitutes an adjudication of the ownership of the 304 shares of stock in controversy and that such adjudication was binding upon both plaintiffs since Clarence Ferguson was represented by counsel, and since Elinor Ferguson appeared personally and was represented by guardian ad litem.

The Supreme Court of Illinois has stated that "a proceeding to fix a tax is not a suit or controversy between parties." [3] There was no issue of ownership in the inheritance tax proceeding between any of the parties to these suits, and we believe that the doctrine of res judicata as construed and applied by the Supreme Court of Illinois has no application to the facts herein. [4]

---

[3] Oakman v. Small, 282 Ill. 360, 118 N.E. 775, 777.

[4] Harding Co. v. Harding, 352 Ill. 417, at page 427, 186 N.E. 152, 155, 88 A.L.R. 563: "When the second action between the same parties is upon a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action, the

Defendants raise the question of jurisdiction in the case of Elinor Ferguson. The complaint alleges the necessary jurisdictional facts and the trial court found that the plaintiff Elinor Ferguson was a citizen and resident of the state of Florida. But the transcript of the evidence does not contain any testimony respecting the citizenship of Elinor Ferguson.

Defendants raise the question for the first time upon appeal and cite Roberts v. Lewis. [5] In that case the facts constituting diversity of citizenship were alleged in the complaint, but there was neither evidence nor finding of fact to support the allegations. Defendants quote and rely upon the following statement: "The necessary consequence is that the allegation of the citizenship of the parties, being a material allegation, properly made in the petition, was put in issue by the answer, and like other affirmative and material allegations made by the plaintiff and denied by the defendant, must be proved by the plaintiff."

The foregoing statement clearly holds that the burden of proving diversity of citizenship is upon the plaintiff when the issue is raised by defendant's answer. But immediately following the quoted language is this statement: "The record showing no proof *or finding* upon the essential point, on which the jurisdiction of the Circuit Court depended, the judgment must be reversed. * * *" (Our italics.)

In the instant case the facts constituting diversity of citizenship were alleged and the trial court found specifically the facts to support the allegations. While it is the rule that the question of lack of jurisdiction can be raised for the first time on appeal, there is no decision of the Supreme Court that permits this court to reverse a judgment of the District Court for lack of jurisdiction when the question is raised for the first time on appeal and when the record affirmatively shows that the trial court did have jurisdiction.

The judgment of the District Court is affirmed.

---

burden of proof is on him who invokes the estoppel, and extrinsic and parol evidence is admissible to prove that the precise question in the second case was raised and determined in the first." (citing cases.)

[5] 144 U.S. 653, 658, 12 S.Ct. 781, 783, 36 L.Ed. 579.